Filed 10/3/00 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2000 ND 178

State of North Dakota, Plaintiff and Appellant

v.

Neal Matt Haverluk, Defendant and Appellee

No. 20000077

Appeal from the District Court of Stark County, Southwest Judicial District, the Honorable Ronald L. Hilden, Judge.

REVERSED AND REMANDED.

Opinion of the Court by Sandstrom, Justice.

Tom M. Henning, State’s Attorney, Courthouse, P.O. Box 130, Dickinson, N.D. 58602-0130, for plaintiff and appellant.

Steven Balaban, 418 East Rosser Avenue, Suite 102, Bismarck, N.D. 58501-4046, for defendant and appellee.

State v. Haverluk

No. 20000077

Sandstrom, Justice.

[¶1] The State of North Dakota appeals from a district court order suppressing evidence.  Concluding the district court erred in its application of the law, we reverse.

 

I

[¶2] Belfield police officer Michael Gant and Belfield police chief Eric Ahrens responded to a complaint from an employee of the Super Pumper Station Store in Belfield, North Dakota.  The employee’s complaint alleged a customer in the store’s parking lot was making “fists gestures” at employees.  When the officers arrived, they attempted to speak to Haverluk, who was seated in a car in the store’s parking lot.  Haverluk responded by cursing at the officers.

[¶3] Officer Gant, who was stationed on the passenger side of Haverluk’s vehicle, observed Haverluk place his right hand between the driver’s seat and console.  Gant informed Chief Ahrens of Haverluk’s actions; the officers drew their weapons and ordered Haverluk to step out of the car.

[¶4] The officers noticed several indications of intoxication and ultimately arrested Haverluk for being in actual physical control (“APC”) of a motor vehicle while under the influence of intoxicating liquor, drugs, or other substances.  Shortly after Haverluk was ordered out of the car, Gant entered the car and reached between the driver’s seat and console, where he found a set of keys, one of which was the vehicle’s ignition key.  Ahrens advised Haverluk he was under arrest.  Haverluk then struck Ahrens in the face.

[¶5] After a preliminary hearing, Haverluk moved to suppress the keys, based on the testimony presented at the preliminary hearing.  The State’s untimely response to the motion included an evidentiary hearing request.  Without addressing either the State’s request for an evidentiary hearing on Haverluk’s motion or Haverluk’s motion to quash the State’s answer as having been untimely submitted, the district court granted Haverluk’s motion to suppress, stating:

Under the facts revealed in this record, law enforcement claimed to be searching for weapons, but none were found, and the search occurred after the situation was secured.

The rationale for the exception—the protection of the officers from assault with a weapon hidden in the vehicle and the prevention of destruction of evidence—does not apply once the vehicle or arrestee is removed from the scene of the arrest . . . .

The car keys are inadmissible.

[¶6] The State filed a statement with the district court, as required by N.D.C.C. § 29-28-07(5), and appeals, contending the district court erred in suppressing the vehicle ignition keys.  The district court had jurisdiction under N.D.C.C. § 27-05-06.  This Court has jurisdiction under N.D. Const. art. VI, § 6, and N.D.C.C. § 29-28-

07(5).

 

II

[¶7] When reviewing a district court’s ruling on a motion to suppress, we defer to the district court’s findings of fact and resolve conflicts in testimony in favor of affirmance.  
City of Grand Forks v. Zejdlik
, 551 N.W.2d 772, 774 (N.D. 1996) (citing 
City of Grand Forks v. Egley
, 542 N.W.2d 104 (N.D. 1996)).  We affirm the district court’s decision unless, after resolving conflicting evidence in favor of affirmance, we conclude there is insufficient competent evidence to support the decision, or unless the decision goes against the manifest weight of the evidence.  
City of Fargo v. Thompson
, 520 N.W.2d 578, 581 (N.D. 1994) (citations omitted).  Questions of law are fully reviewable.  
State v. Zimmerman
, 529 N.W.2d 171, 173 (N.D. 1995) (citations omitted).

A

[¶8] The search of vehicles incident to arrest has been reviewed numerous times by this Court.  
State v. Wanzek
, 1999 ND 163, 598 N.W.2d 811; 
State v. Olson
, 1998 ND 41, 575 N.W.2d 649; 
State v. Erbele
, 554 N.W.2d 448 (N.D. 1996); 
State v. Hensel
, 417 N.W.2d 849 (N.D. 1988).  These cases clearly establish this Court applies the 
New York v. Belton
 rule:  “when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile.”  453 U.S. 454, 460 (1981) (footnotes omitted).

[¶9] The district court correctly noted that a warrantless search incident to arrest is invalid when it is not contemporaneous in time or in close proximity to the place of the arrest.  
State v. Kunkel
, 455 N.W.2d 208, 210 (N.D. 1990).  Likewise, evidence seized subsequent to an invalid arrest is inadmissible.  
State v. Phelps
, 286 N.W.2d 472, 475-76 (N.D. 1979).  Haverluk contends the search-incident-to-arrest exception does not apply because the search occurred before his arrest.  Haverluk also argues the testimony establishes he “was not yet combative, was out of the vehicle,” and was “actually moving away from the vehicle.”

[¶10] In 
Wanzek
, we held a warrantless search of the passenger compartment of a vehicle is valid even if the arrestee voluntarily exits the vehicle prior to arrest.  1999 ND 163, ¶¶ 6, 22, 598 N.W.2d 811.  In 
Wanzek
, the defendant claimed the search of her vehicle was invalid because she was not an occupant at the time of her arrest and therefore the search was not valid as a search incident to arrest.  
Id.
 at ¶ 10.  The district court appears to have applied a rationale similar to the one rejected in 
Wanzek
.

[¶11] A search is not invalid under the 
Belton
 exception simply because a person is not occupying the vehicle when the search is conducted.  
Wanzek
, 1999 ND 163, ¶ 10, 598 N.W.2d 811.  Some courts have interpreted 
Belton
 to require initial police contact while a person is inside a vehicle.  
Id.
 at ¶ 13.  We, however, have not interpreted 
Belton
 to require that the arrestee be inside the vehicle or that contact be made before the arrestee exits the vehicle.  
Id.
 at ¶ 15.

B

[¶12] Haverluk argues the search was invalid because he was not formally arrested at the time the search took place.  This Court has applied the United States Supreme Court’s rationale in 
Rawlings v. Kentucky
 to searches of a vehicle occurring prior to formal arrest.  448 U.S. 98, 111 (1980); 
Wanzek
, 1999 ND 163, ¶ 17, 598 N.W.2d 811 (citing 
State v. Overby
, 1999 ND 47, ¶ 8, 590 N.W.2d 703).  “‘Where the formal arrest followed quickly on the heels of the challenged search of petitioner’s person, we do not believe it particularly important that the search preceded the arrest rather than vice versa’ so long as the fruits of the search were ‘not necessary to support probable cause to arrest.’”  
Wanzek
, at ¶ 17 (citing 
Overby
, at ¶ 8 n.6).

[¶13] When a search incident to an arrest has been conducted prior to the formal arrest, we “closely examine the facts prior to the search to determine if probable cause to arrest is present without regard to any evidence which might be discovered during the search preceding the arrest.”  
Overby
, 1999 ND 47, ¶ 17, 590 N.W.2d 703 (VandeWalle, C.J., specially concurring).

1

[¶14] Haverluk argues the officers could not have had probable cause to search when they lacked the keys because vehicle keys are essential to probable cause and APC could “only be charged from the presence of the keys.”

[¶15] The essential elements of APC are:  (1) the defendant is in actual physical control of a motor vehicle on a highway or upon public or private areas to which the public has a right of access; and (2) the defendant was under the influence of intoxicating liquor, drugs, or other substances.  
See
 
State v. Ulmer
, 1999 ND 245, ¶ 7, 603 N.W.2d 865 (identifying similar elements for driving under the influence, citing 
State v. Salhus
, 220 N.W.2d 852, 856 (N.D. 1974)).

[¶16] We have frequently upheld APC convictions even when the vehicles were inoperable or the operator had no intent to drive.  
City of Fargo v. Novotny
, 1997 ND 73, 562 N.W.2d 95 (intent to drive is not an element of APC); 
Salvaggio v. North Dakota Dep’t of Transp.
, 477 N.W.2d 195 (N.D. 1991) (APC is appropriate when a person is arrested outside of vehicle while attempting to free a stuck vehicle); 
City of Fargo v. Komulainen
, 466 N.W.2d 610 (N.D. 1991) (a defendant who was asleep in vehicle with keys in ignition may be convicted of APC despite allegation the car was inoperable); 
City of Fargo v. Theusch
, 462 N.W.2d 162 (N.D. 1990) (a person may be guilty of APC even though the person is asleep in the car with the vehicle keys in his coat pocket); 
State v. Ghylin
, 250 N.W.2d 252 (N.D. 1977) (evidence was sufficient to support APC conviction of defendant who was stuck in a ditch); 
State v. Schuler
, 243 N.W.2d 367 (N.D. 1976) (evidence sufficient to support APC conviction when defendant was in a “high centered” automobile).

[¶17] “The key factor in determining actual physical control is whether the defendant is able to manipulate the vehicle’s controls.”  
Novotny
, 1997 ND 73, ¶ 7, 562 N.W.2d 95.  The defendant’s ability to manipulate the vehicle controls is a question of fact for the jury.  
Id.
 at ¶¶ 9, 11.  The presence of the vehicle ignition key is not essential to the offense, and presence of the vehicle ignition key is not needed for probable cause.  
Cf.
 
State v. Larson
, 479 N.W.2d 472 (N.D. 1992) (upholding the DUI conviction of a person steering and braking an inoperable bus while the person had the bus keys in his pocket).

[¶18] “Actual physical control of a vehicle does not solely depend on the location of the ignition key.  The location of the key is one factor among others to consider.”  
Theusch
, 462 N.W.2d at 163 (citation omitted).  Because the location of the vehicle keys is only one factor, the vehicle keys are “not necessary to support probable cause to arrest.”  
Wanzek
, 1999 ND 163, ¶ 17, 598 N.W.2d 811 (citing 
Overby
, 1999 ND 47, ¶ 8, 590 N.W.2d 703).

2

[¶19] Here, a careful examination of the facts establishes that the officers had probable cause to arrest Haverluk prior to the search of the vehicle.  The officers responded to a complaint of an unruly customer and found Haverluk seated in his vehicle.  Haverluk’s unusual behavior, his slurred speech and bloodshot eyes, the odor of alcoholic beverages emanating from Haverluk and his vehicle, and Haverluk’s use of his vehicle to steady himself were sufficient to establish probable cause to arrest for APC.  Therefore, the officer’s search of Haverluk’s car was valid as a search incident to arrest, and the vehicle key was not essential for the probable cause to arrest.

 

III

[¶20] The search in this instance was also valid as an officer-safety measure.  The United States Supreme Court has held a law enforcement officer may order a person to exit a vehicle when the person has been lawfully detained, even in situations not amounting to arrest.  
Pennsylvania v. Mimms
, 434 U.S. 106, 108-11 (1977).  This Court has embraced and extended the 
Mimms
 rationale.  
State v. Gilberts
, 497 N.W.2d 93 (N.D. 1993); 
see also
 
State v. Mertz
, 362 N.W.2d 410, 413 (N.D. 1985) (extending 
Mimms
 to allow a law enforcement officer to place a traffic violator in a patrol car).

[¶21] 
Mimms
 balances the governmental interest in the safety of the officers, the extent of the intrusion, and the nature of the act from which the search stemmed.  
New York v. Class
, 475 U.S. 106, 117 (1986).  Here the officers feared Haverluk was reaching for or concealing a weapon.  Haverluk’s behavior was unusual.  The officers drew their weapons and ordered Haverluk out of the car.  The search was initially confined to the area between the driver’s seat and console.  The officers testified their sole purpose in searching was safety.  Under the 
Mimms
 balancing test, the safety of the officers here is an important governmental interest, and the search that followed was minimally intrusive.  
Id.

[¶22] A law enforcement officer may conduct a pat-down search of a person when the officer “possesses an articulable suspicion that an individual is armed and dangerous.”  
Michigan v. Long
, 463 U.S. 1032, 1034 (1983) (citing 
Terry v. Ohio
, 392 U.S. 1 (1968)).  If a person is outside a vehicle, a search of the vehicle is valid if the officer possesses a reasonable belief that a person poses a danger if allowed to reenter the vehicle.  
Id.
 at 1050 (citations omitted).  This type of search must be restricted to those areas within the person’s immediate control and to areas that could contain a weapon.  
Id.

[¶23] When Haverluk reached between the seat and console, the officers drew their weapons, apparently fearing danger.  Officer Gant testified he searched between the seat and console because he didn’t know if Haverluk “was going for something or if he was placing something there.”  Gant testified the search was conducted “[f]or our safety.”

[¶24] The district court erred in concluding the “rationale for the exception—the protection of the officers” did not apply.  Even out of the vehicle, a suspect may “break away from police control and retrieve a weapon from his automobile.”  
Id.
 (citing 
United States v. Rainone
, 586 F.2d 1132, 1134 (7th Cir. 1978), 
cert. denied
, 440 U.S. 980 (1979)).  In fact, after Haverluk was told he was under arrest, he assaulted Chief Ahrens.  The officers had to subdue Haverluk to handcuff him.  The district court also erroneously gave significance to the immaterial fact that vehicle keys rather than weapons were discovered.  
See
 
Michigan v. Long
, 463 U.S. 1032, 1035 (1983) (upholding the discovery of marijuana during the protective search of a vehicle for weapons).

 

IV

[¶25] Haverluk argues we should affirm the suppression of evidence because the State’s response to his motion to suppress was not timely filed in the trial court.  Haverluk moved to suppress on February 3, 2000.  The State did not respond until February 16, 2000.  Haverluk argues that under N.D.R.Ct. 3.2(a) and the time computations of N.D.R.Civ.P. 6(e), the State’s untimely response is an admission Haverluk’s motion was meritorious.

[¶26] Once a party has filed a motion, “the adverse party shall have 10 days after service of a brief within which to serve and file an answer brief and other supporting papers.”  N.D.R.Ct. 3.2(a).  “Failure to file a brief by the adverse party may be deemed an admission that, in the opinion of party or counsel, the motion is meritorious.  Even if an answer brief is not filed, the moving party must still demonstrate to the court that it is entitled to the relief requested.”  N.D.R.Ct. 3.2(b).

[¶27] In 
City of Grand Forks v. Zejdlik
, 551 N.W.2d 772, 774-75 (N.D. 1996), we affirmed a trial court’s denial of a motion to suppress despite a late answer from the City.  Although, under the provisions of N.D.R.Ct. 3.2(b) in effect at that time, the City’s failure to respond within ten days was an admission that the motion had merit, 
Zejdlik
, at 774, we stated:

But, as we explained in 
Hartman v. Hartman
, 466 N.W.2d 155, 156 (N.D. 1991), “[a]lthough a party who fails to respond or make an appearance assumes a substantial risk that the trial court will act favorably on the motion, the moving party has the burden of demonstrating to the trial court’s satisfaction that he is entitled to the relief requested.”  Zejdlik argues that, unlike the movant in 
Hartman
, he presented evidence at the hearing which “showed that [he] was entitled to a favorable decision on the [m]otion.”  We disagree.

Id.
 at 774; 
see also
 
City of Jamestown v. Snellman
, 1998 ND 200, ¶ 6, 586 N.W.2d 494 (“In suppression cases, the defendant has the initial burden of establishing a prima facie case of illegal seizure before the burden of persuasion shifts to the prosecution to justify its actions.”) (citing 
City of Fargo v. Sivertson
, 1997 ND 204, ¶ 6, 571 N.W.2d 137; 
State v. Glaesman
, 545 N.W.2d 178, 182 n.1 (N.D. 1996)).  As a result of its untimely response, the State here assumed the risk of unfavorable action by the district court.  Haverluk still had to demonstrate he was entitled to the relief requested.  
Zejdlik
, at 774; N.D.R.Ct. 3.2(b).  The district court, however, did not consider the late reply an admission, nor did it abuse its discretion by not considering it an admission.

 

V

[¶28] Because the district court erred in its application of the law, we reverse the order of the district court and remand for further proceedings.

[¶29] Dale V. Sandstrom

William A. Neumann

Mary Muehlen Maring

Carol Ronning Kapsner

Gerald W. VandeWalle, C.J.