2002 ND 177

**Kurt A. OBRIGEWITCH, Petitioner and Appellee,**

v.

**DIRECTOR, NORTH DAKOTA DE-PARTMENT OF TRANSPORTA-TION, Respondent and Appellant.**

No. 20020164.

Supreme Court of North Dakota.

Nov. 5, 2002.

Kurt A. Obrigewitch, pro se, Belfield, ND, for petitioner and appellee; no appearance.

Andrew Moraghan, Attorney General's Office, Bismarck, ND, for respondent and appellant.

KAPSNER, Justice.

[¶ 1] The North Dakota Department of Transportation ("Department") appeals from the judgment of the district court reversing an administrative decision revoking Kurt Alferd Obrigewitch's driving privileges. We conclude the police officer had reasonable grounds to believe Obrigewitch was in actual physical control of a vehicle while under the influence of intoxicating liquor; Obrigewitch was properly arrested; and Obrigewitch refused to submit to a blood-alcohol test. We, therefore, reverse the judgment of the district court and remand to reinstate the revocation of Obrigewitch's driver's license for two years.

I.

[¶ 2] In the early hours of January 19, 2002, an off-duty Billings County Deputy Sheriff called the Belfield Police Department from his house to report a suspicious vehicle being driven with its headlights off. As a Belfield police officer was driving to the location, the deputy sheriff made radio contact with the police officer to report the suspicious vehicle had parked in the alley behind a residence. At approximately 1:30 a.m., the police officer parked behind a vehicle matching the description of the reported vehicle. The vehicle, owned by Obrigewitch, was parked in the middle of the alley, completely blocking the portion intended for vehicular use. Obrigewitch was asleep in the front of his vehicle with the engine and headlights turned off. The location of the ignition key was never determined.

[¶ 3] While talking with Obrigewitch, the police officer noticed a strong odor of alcohol in the vehicle. The police officer asked Obrigewitch to get out of the vehicle and take some tests. After Obrigewitch refused to get out of the vehicle for seven or eight minutes, the police officer considered Obrigewitch to have refused to submit to on-site screening tests and he was placed under arrest at, approximately 1:40 a.m., for being in actual physical control of a vehicle while under the influence of alcohol. Obrigewitch again refused to get out of the vehicle and was physically removed from the vehicle.

[¶ 4] While driving from Belfield to the Dickinson Law Enforcement Center, the police officer made several requests of Obrigewitch to take a chemical test for blood-alcohol analysis. Obrigewitch responded in an evasive manner with either questions of his own or answers that were irrelevant to the request. After 20 to 25 minutes of trying to persuade Obrigewitch to submit to a chemical test, the police officer abandoned his efforts and deemed Obrigewitch's responses a refusal.

[¶ 5] Obrigewitch requested an administrative hearing. The hearing officer concluded the police officer had sufficient grounds to stop and detain Obrigewitch. The hearing officer also concluded that Obrigewitch was validly arrested, he was required to submit to the requested blood-alcohol test, and he refused to submit to the test by continually avoiding or ignoring the officer's request for a test after numerous opportunities to comply. Because Obrigewitch failed to submit to a chemical

test, his license and driving privilege were revoked for two years.

[¶ 6] Obrigewitch appealed to the district court. The district court reversed the hearing officer's decision, finding that "[s]ince there is no finding that the vehicle was operable and the record does not support a finding that it was operable without a key, there are not reasonable grounds to find Obrigewitch was in actual physical control of the vehicle." The Department appealed.

## II.

[¶ 7] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative agency decision to revoke a driver's license. In reviewing an administrative agency's order on appeal to this Court, we review the agency's findings and decisions, and not those of the district court. *Kraft v. North Dakota State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572. "However, the district court's analysis is entitled to respect if its reasoning is sound." *Id.* We give great deference to administrative rulings, and we must affirm the agency's decision unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

N.D.C.C. § 28–32–46. Normally, we engage in a three-step process when we review an appeal from an administrative agency decision. *Richardson v. Dir. of the Dep't of Transp.*, 497 N.W.2d 100, 100 (N.D.1992). The following three steps are considered:

(1) Are the agency's findings of fact supported by a preponderance of the evidence? (2) Are the conclusions of law sustained by the agency's findings of fact? (3) Is the agency's decision supported by the conclusions of law?

*Id.*

[¶ 8] In determining whether an agency's findings of fact are supported by a preponderance of the evidence, our review is confined to the record before the agency and to determining "whether a reasoning mind reasonably could have determined the factual conclusions were proven by the weight of the evidence." *Kraft*, 2001 ND 131, ¶ 10, 631 N.W.2d 572. We defer to the hearing officer's findings of fact if we find them to be supported by a preponderance of the evidence. *Moran v. Dep't of Transp.*, 543 N.W.2d 767, 769 (N.D.1996). However, the ultimate conclusion of whether the facts meet the legal standard that the arresting officer had reasonable grounds to believe Obrigewitch had been in actual physical control of a vehicle while under the influence of intoxicating liquor in violation of § 39–08–01, N.D.C.C., is a question of law fully review-

able on appeal. *See Stanton v. Moore,* 1998 ND 213, ¶ 10, 587 N.W.2d 148.

### III.

[¶ 9] The Department argues the police officer had reasonable grounds to arrest Obrigewitch for being in actual physical control of a vehicle while under the influence of intoxicating liquor. Section 29–06–15(1)(f), N.D.C.C., permits a peace officer to make an arrest if the officer has "reasonable cause" to believe that a person is "in actual physical control of a vehicle while under the influence of alcoholic beverages." "Reasonable cause" to believe an offense has been committed is synonymous with "probable cause." *State v. Hensel,* 417 N.W.2d 849, 852 (N.D. 1988) (citations omitted).

[¶ 10] "To establish probable cause, it is not necessary that the officer possess knowledge of facts sufficient to establish guilt; all that is necessary is knowledge that would furnish a prudent person with reasonable grounds for believing a violation has occurred." *Hensel,* 417 N.W.2d at 852. We have also defined probable cause to exist "when the facts and the circumstances within a police officer's knowledge and of which [the officer] ha[s] reasonable trustworthy information are sufficient to warrant a person of reasonable caution to believe that an offense has been or is being committed." *Seela v. Moore,* 1999 ND 243, ¶ 6, 603 N.W.2d 480.

[¶ 11] The facts of this case support the police officer's probable cause determination. An off-duty deputy sheriff reported a suspicious vehicle being driven by his house in the dark without the use of headlights. N.D.C.C. § 39–21–01. In addition, the deputy sheriff provided the arresting officer with the location of the suspicious vehicle when it parked at a nearby residence. Although the arresting officer did not personally observe the reported traffic infraction of driving in the dark without headlights, officers working together can rely on information from each other. *City of Wahpeton v. Roles,* 524 N.W.2d 598, 600 (N.D.1994). Thus, the facts and circumstances within the arresting officer's knowledge were sufficient to warrant a person of reasonable caution to believe an offense has been committed.

[¶ 12] Additionally, the hearing officer made the following findings of fact: (1) the arresting officer observed Obrigewitch's vehicle "parked in the middle of the alley in a manner that would block any other traffic from passing on the alley's road surface[;]" (2) Obrigewitch was found "lying in the seat with his feet on the left floorboard and his head near the right door[;]" and (3) the arresting officer noticed "[a] strong odor of an alcoholic beverage emanat[ing] from inside the car." To decide whether a preponderance of the evidence supports the agency's findings, we ask "whether a reasoning mind could reasonably determine that the weight of the evidence supports the [agency's] findings." *Moran,* 543 N.W.2d at 769. In this case, uncontroverted evidence in the record supports the findings. Therefore, we conclude that the facts taken together constitute probable cause for arrest on a charge of being in actual physical control of a vehicle while under the influence of intoxicating liquor.

[¶ 13] Obrigewitch argues, and the district court concurs, that because the ignition key to the vehicle was not located, there is insufficient evidence to establish Obrigewitch was in actual physical control of his vehicle at the time of the arrest. The essential elements of actual physical control are: "(1) the defendant is in actual physical control of a motor vehicle on a highway or upon public or private areas to which the public has a right of access; and (2) the defendant was under the influence

of intoxicating liquor, drugs, or other substances." *State v. Haverluk*, 2000 ND 178, ¶ 15, 617 N.W.2d 652. To determine whether the defendant is in actual physical control, the main factor is "whether the defendant is able to manipulate the vehicle's controls." *City of Fargo v. Novotny*, 1997 ND 73, ¶ 7, 562 N.W.2d 95. However, "[t]he presence of the vehicle ignition key is not essential to the offense, and presence of the vehicle ignition key is not needed for probable cause." *Haverluk*, 2000 ND 178, ¶ 17, 617 N.W.2d 652. Further, the location of the ignition key was an issue that arose after the arrest and probable cause to arrest must be based on what was known at the time of the arrest. *See State v. Salhus*, 220 N.W.2d 852, 855 (N.D.1974). Because probable cause to arrest existed without establishing the location of the key, Obrigewitch was properly arrested.

## IV.

[¶ 14] At the administrative hearing, Obrigewitch argued that, as a result of confusion caused by the police officer, Obrigewitch did not make a knowing refusal to submit to a chemical test. The question of whether Obrigewitch refused to take the test is a question of fact. *Hammeren v. N.D. State Highway Comm'n*, 315 N.W.2d 679, 682–83 (N.D. 1982). Whether Obrigewitch was confused when he refused to take the test is also a question of fact. *Id.* at 683. The hearing officer found that Obrigewitch continually interrupted the police officer while the implied consent law was read to Obrigewitch. The hearing officer found that the officer "made a number of requests of Obrigewitch to take a chemical test for blood alcohol analysis" and Obrigewitch responded in "an obstreperous and evasive manner." After 20 to 25 minutes of unsuccessfully trying to persuade Obrigewitch to submit to a chemical test, the police officer abandoned his efforts. The hearing officer concluded that "[b]y [Obrigewitch's] actions of continually avoiding or ignoring the officer's request for a test after numerous opportunities to comply, Obrigewitch effectively refused to submit to the test."

[¶ 15] We have held "the failure to submit to a test, whether by stubborn silence or by a negative answer, can be a refusal." *Mayo v. Moore*, 527 N.W.2d 257, 260 (N.D. 1995). In *Mayo*, the defendant responded to several requests to take the Intoxilyzer test by saying she could not hear the police officer, she turned her face to the wall, and she also asked the officer why he was doing this to her. *Id.* The police officer considered her responses to be a refusal and this Court upheld the hearing officer's finding that the defendant's actions amounted to a refusal. *Id.* at 260–61. Obrigewitch engaged in similar tactics by responding to the request for a chemical test with questions of his own or answers that were otherwise irrelevant. Thus, we conclude Obrigewitch effectively refused to submit to a chemical test.

[¶ 16] Under § 39–20–01, N.D.C.C., if an operator of a motor vehicle on a highway in this state is arrested for driving or being in actual physical control of a vehicle while under the influence of intoxicating liquor, the operator is deemed to have consented to a chemical test to determine blood-alcohol content. *Krabseth v. Moore*, 1997 ND 224, ¶ 7, 571 N.W.2d 146. Although a driver may refuse to submit to chemical testing, the consequences for such refusal are set forth under N.D.C.C. § 39–20–04(1), which provides:

> If a person refuses to submit to testing under section 39–20–01 or 39–20–14, none may be given, but the law enforcement officer shall immediately take possession of the person's operator's license if it is then available and shall immediately issue to that person a temporary

operator's permit. . . . The temporary operator's permit serves as the director's official notification to the person of the director's intent to revoke driving privileges in this state and of the hearing procedures under this chapter. The director, upon the receipt of that person's operator's license and a certified written report of the law enforcement officer in the form required by the director, . . . showing that the officer had reasonable grounds to believe the person had been driving or was in actual physical control of a motor vehicle while in violation of section 39–08–01 or equivalent ordinance . . . and in conjunction with the violation or accident the officer has, through the officer's observations, formulated an opinion that the person's body contains alcohol, that the person was lawfully arrested if applicable, and that the person had refused to submit to the test or tests under section 39–20–01 or 39–20–14, shall revoke that person's license or permit to drive and any nonresident operating privilege for the appropriate period under this section, . . . The period of revocation or denial of issuance of a license or permit under this section is:

. . .

b. Two years if the person's driving record shows that within the five years preceding the most recent violation of this section, the person's operator's license has been once previously suspended, revoked, or issuance denied for a violation of this chapter or section 39–08–01 or equivalent ordinance.

[¶ 17] From our review of the record, we conclude the hearing officer's findings of fact are supported by a preponderance of the evidence, the conclusions of law are sustained by the findings of fact, and the decision to revoke Obrigewitch's driver's license is in accordance with the law. The district court, therefore, erred in reversing the administrative hearing officer's decision. We reverse and remand for reinstatement of the administrative license revocation.

[¶ 18] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN and MARY MUEHLEN MARING, JJ., concur.