2003 ND 113

**Robert Shawn RIST, Petitioner and Appellee,**

v.

**NORTH DAKOTA DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

No. 20020303.

Supreme Court of North Dakota.

July 16, 2003.

Chad C. Nodland, Chad C. Nodland, P.C., Bismarck, ND, for petitioner and appellee.

Reid A. Brady, Assistant Attorney General, Bismarck, ND, for respondent and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]    The North Dakota Department of Transportation ("Department") appealed from a district court judgment [1] reversing

---

1.  The Department filed a notice of appeal on October 23, 2002, stating it was appealing from the district court's "Order Reversing Hearing Officer's Decision and Remanding for Dismissal."   Section 28–32–49, N.D.C.C., governing administrative agency appeals, authorizes only appeals from judgments.  *See* N.D.C.C. § 28–32–49 (previously § 28–32–21); *Sowatzki v. N.D. Workers Comp. Bureau*, 1997 ND 137, ¶ 10, 567 N.W.2d 189.   We

an administrative hearing officer's decision to suspend Robert Rist's driving privileges for 91 days. We reverse the district court judgment and reinstate the suspension of Rist's license.

## I

[¶ 2] In June 2002, at around 1:00 a.m., a Burleigh County deputy sheriff noticed a pickup parked in an area south of Bismarck by a boat dock. The deputy observed Rist "slumped behind the [steering] wheel with his chin in his chest." The deputy parked his vehicle behind the pickup in a "tactical position" he used in all traffic stops, although he did not park in a manner which blocked the pickup from leaving. He decided to perform a welfare check to determine if Rist needed assistance. The deputy walked to the driver's side window, which was completely rolled down, and shouted several times, "Sheriff's Department, wake up!" When this failed to rouse Rist, the deputy reached inside the pickup through the open window and shook Rist's left shoulder. Rist awoke and told the deputy he was "okay" and was fishing.

[¶ 3] The deputy smelled the odor of alcohol coming from inside the vehicle and did not see any fishing poles in the water. He asked Rist for identification. When Rist exited the vehicle to retrieve his identification from the back of the pickup, the deputy noticed an open beer can on the pickup's console; he also observed Rist had bloodshot eyes, walked unsteadily, and slurred his words. Rist consented to field sobriety tests and failed the horizontal gaze nystagmus and one-leg stand tests. On the basis of these tests and the results of an Intoxilyzer test, the deputy arrested

Rist for actual physical control of a vehicle while under the influence of intoxicating liquor. A subsequent blood test showed Rist's blood-alcohol content was .13 percent. During his encounter with Rist, the deputy apparently did not determine the location of the pickup's ignition key.

[¶ 4] Rist requested an administrative hearing. The hearing officer suspended Rist's driving privileges for 91 days, concluding the deputy had acted as a community caretaker when approaching Rist and had reasonable grounds to believe Rist was in actual physical control of a vehicle in violation of N.D.C.C. § 39–08–01 or equivalent ordinance. The district court reversed the hearing officer's decision and remanded for dismissal. The court concluded the deputy's actions exceeded the scope of community caretaking and the offense of actual physical control requires ignition keys or evidence the vehicle can be started without keys.

[¶ 5] The Department argues the initial encounter between Rist and the deputy was justified by the community caretaking exception. It further argues that as the deputy observed Rist, the deputy formed a reasonable and articulable suspicion Rist was in actual physical control of his vehicle while under the influence of intoxicating liquor and the deputy had probable cause to arrest Rist for actual physical control.

## II

[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative agency decision to suspend a driver's license. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. On appeal, we review the findings and decisions of the

have stated an administrative agency appeal from an order is properly before this Court if the record contains a judgment consistent with the order. *Olson v. Job Serv. North*

*Dakota,* 379 N.W.2d 285, 287 (N.D.1985). On December 10, 2002, the district court entered a judgment consistent with its earlier order. Therefore, this appeal is properly before us.

administrative agency. *Obrigewitch v. Director, N.D. Dept. of Transp.*, 2002 ND 177, ¶ 7, 653 N.W.2d 73. We defer to the administrative agency's ruling by not making independent findings of fact or by substituting our own judgment for the agency's, but "the ultimate conclusion of whether the facts meet the legal standard, rising to the level of probable cause, is a question of law, fully reviewable on appeal." *Sonsthagen*, at ¶ 7. Although our review is limited to the record before the administrative agency, "the district court's analysis is entitled to respect if its reasoning is sound." *Obrigewitch*, at ¶¶ 7–8 (quoting *Kraft v. N.D. State Bd. of Nursing*, 2001 ND 131, ¶ 10, 631 N.W.2d 572). Under N.D.C.C. § 28–32–46, this Court must affirm the agency's order unless:

1. The order is not in accordance with the law.

2. The order is in violation of the constitutional rights of the appellant.

3. The provisions of this chapter have not been complied with in the proceedings before the agency.

4. The rules or procedure of the agency have not afforded the appellant a fair hearing.

5. The findings of fact made by the agency are not supported by a preponderance of the evidence.

6. The conclusions of law and order of the agency are not supported by its findings of fact.

7. The findings of fact made by the agency do not sufficiently address the evidence presented to the agency by the appellant.

8. The conclusions of law and order of the agency do not sufficiently explain the agency's rationale for not adopting any contrary recommendations by a hearing officer or an administrative law judge.

## III

[¶ 7] The Department argues the district court erred when it concluded the deputy was not acting as a community caretaker when he initially approached Rist. The district court found as a matter of law the deputy's actions were not those of a community caretaker.

## A

[¶ 8] The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." However, the law distinguishes between approaching an already stopped vehicle and stopping a moving one. *State v. Franklin*, 524 N.W.2d 603, 604 (N.D. 1994) (citing *State v. Halfmann*, 518 N.W.2d 729 (N.D.1994)). No seizure within the context of the Fourth Amendment occurs when an officer approaches a parked vehicle "if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response." *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992) (citing *Wibben v. N.D. State Highway Comm'r*, 413 N.W.2d 329, 334–35 (N.D.1987) (VandeWalle, J., concurring)). Not all citizen-law enforcement encounters implicate a citizen's Fourth Amendment rights; a seizure occurs only when a law enforcement officer, by means of physical force or show of authority, in some manner restrains the liberty of a citizen. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Boline*, 1998 ND 67, ¶ 25, 575 N.W.2d 906.

[¶ 9] For example, community caretaking allows citizen-law enforcement contact without an officer's reasonable suspicion of criminal conduct. *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996).

The law recognizes community caretaking functions as those citizen-law enforcement encounters which are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). In situations where it is obvious that a citizen neither needs nor desires assistance, an officer has no community caretaking role to fill. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478 (citing *State v. DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579). However, we do not conclude an individual slumped over a steering wheel in the circumstances of this case presents such an "obvious" situation. *Cf. Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶¶ 14–15, 632 N.W.2d 419 (concluding an officer's encounter with an individual was justified by the officer's community caretaking role when the individual was slumped over the steering wheel of a vehicle with its engine running); *Franklin*, 524 N.W.2d at 605 (determining officers' approach of individuals parked at night in motel parking lot and slumped down in their seats was more of a community caretaking encounter than a stop or seizure).

[¶ 10] While no seizure occurs during a community caretaking encounter, "even a casual encounter can become a seizure if the officer acts in a manner that a reasonable person would view as threatening or offensive if done by another private citizen-through an order, a threat, or display of a weapon." *Langseth*, 492 N.W.2d at 300 (citing *Wibben*, 413 N.W.2d at 335 (VandeWalle, J., concurring)). *See also Halfmann*, 518 N.W.2d at 731. For example, in *State v. Boyd*, we concluded a deputy had not acted as a community caretaker and stated:

> Deputy Schuh "pulled in behind" Boyd and her companions, blocking their vehicle's rear exit. Deputy Schuh did not converse with them in a casual manner; she ordered them to go to the front of their vehicle and put their hands on the hood. By issuing orders and demanding compliance, Deputy Schuh removed herself from the scope of acceptable actions for officers acting as community caretakers.

2002 ND 203, ¶ 10, 654 N.W.2d 392 (citations omitted). Although an officer acting as a community caretaker may not exceed the basic scope of permissible conduct described in our cases, such as those cited above, he or she may encounter an individual whose state of consciousness prevents a conversational inquiry from occurring. Under those circumstances, the officer must determine what actions need to be taken to get the individual to respond and therefore may need to approach a person who does not respond differently from a person who is conscious and able to converse with the officer.

[¶ 11] Because the deputy could not be sure whether Rist was simply sleeping in his vehicle or in need of assistance, we conclude the deputy's shouts at Rist were part of a welfare check. In the circumstances of this case, we do not construe the deputy's statement—"Sheriff's Department, wake up!"—as the show of authority or the order to do something which removes a law enforcement officer's actions from the scope of community caretaking. The deputy's loud voice in this situation was a vehicle to awaken a nonresponsive individual, and his words served to alert Rist to the deputy's presence. Although the deputy's statement arguably could be considered an "order" to wake up we do not interpret his statement to be the kind of demand for compliance contemplated by our previous cases. *Cf. Boyd*, 2002 ND 203, ¶ 10, 654 N.W.2d 392. Furthermore, by announcing a law enforcement title or

affiliation, officers may alleviate unnecessary fear on behalf of an individual they approach, thereby facilitating a safer encounter both for the officer and the individual. An officer trying to awaken a person wants to avoid provoking a defensive response from a startled individual who might think he has been accosted by an unidentified person.

**B**

[¶ 12] If an officer learns something during a caretaking encounter that causes a reasonable suspicion or probable cause, the encounter can lead to further investigation, seizure, and even arrest. *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 9, 571 N.W.2d 137 (citing *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 775 (N.D.1996)). Here, after initially approaching Rist, the deputy testified he observed an open beer can inside the vehicle and noticed Rist had bloodshot eyes, walked unsteadily, and slurred his words.

[¶ 13] The hearing officer found:

Deputy Messmer saw a pickup parked by a boat dock south of Bismarck. A person was slumped over in the driver's seat, so Deputy Messmer approached in order to do a welfare check.... The vehicle's engine was not running; the ignition key may have been in the ignition, but Deputy Messmer is not certain about the key's location. Deputy Messmer tried to wake the driver first by yelling at him, then reached in and shook his shoulder. The driver, Robert Rist, then awoke. Mr. Rist had an odor of alcohol on his breath, so field tests were requested. Tests done were horizontal gaze nystagmus, 1–leg stand, and S–D2; results were unsatisfactory or failing on all three tests. Robert Rist was arrested for being in actual physical control of a vehicle in violation of NDCC [§ ] 39–08[–]01 or equivalent ordinance. Blood was drawn by an R.N. within two

hours of the time Deputy Messmer first saw Mr. Rist. Blood testing was done in accordance with the state toxicologist's approved method, with results showing an alcohol concentration of .13%.

The district court concluded the hearing officer's finding of fact that "the ignition key may have been in the ignition" was not supported by a preponderance of the evidence and was refuted by the deputy's uncertainty about the key's location. The court stated "[t]here must be keys to have actual physical control or there must be evidence the vehicle can be started without keys."

[¶ 14] However, the essential elements of actual physical control are "(1) the defendant is in actual physical control of a motor vehicle on a highway or upon public or private areas to which the public has a right of access; and (2) the defendant was under the influence of intoxicating liquor, drugs, or other substances." *State v. Haverluk*, 2000 ND 178, ¶ 15, 617 N.W.2d 652. The primary factor in determining the offense of actual physical control is whether the defendant has the ability to manipulate the controls of the vehicle. *Obrigewitch*, 2002 ND 177, ¶ 13, 653 N.W.2d 73. As we stated in *Haverluk*:

"Actual physical control of a vehicle does not solely depend on the location of the ignition key. The location of the key is one factor among others to consider." Because the location of the vehicle keys is only one factor, the vehicle keys are "not necessary to support probable cause to arrest."

2000 ND 178, ¶ 18, 617 N.W.2d 652 (citations omitted). *See also Obrigewitch*, at ¶ 13; *City of Fargo v. Theusch*, 462 N.W.2d 162, 163–64 (N.D.1990).

[¶ 15] "Reasonable grounds" is synonymous with the term "probable cause." *Henderson v. Director, N.D. Dep't of Transp.*, 2002 ND 44, ¶ 8, 640

N.W.2d 714. "Probable cause to arrest exists when the facts and circumstances within police officers' knowledge and of which they have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in believing an offense has been or is being committed." *Id.* (quoting *Fargo v. Egeberg*, 2000 ND 159, ¶ 8, 615 N.W.2d 542). The hearing officer made the following conclusions of law:

> Deputy Messmer had a proper basis for approaching Robert Rist's pickup; this was a part of his community caretaking duties. Deputy Messmer had reasonable grounds to believe that Robert Rist was in actual physical control of a vehicle in violation of NDCC [§ ] 39–08–01 or equivalent ordinance. Mr. Rist was arrested, was properly tested, and had an alcohol concentration of at least .10%.

After reviewing the record, we conclude the evidence in the record from the administrative hearing supports the hearing officer's conclusion that the deputy acted as a community caretaker when he approached Rist, and as a result of his encounter with Rist, the deputy had reasonable grounds to believe that Rist was in actual physical control of the vehicle.

### C

[¶ 16] Rist's counsel has asserted he was unable to offer evidence about the inoperability of the pickup because he learned about the absence of the ignition key for the first time at the administrative hearing. The district court denied Rist's request to remand the matter for the limited purpose of taking additional testimony on the issue of the vehicle's operability. He makes the same request of this Court. Section 28–32–45, N.D.C.C., provides, in part:

> If an application for leave to offer additional testimony, written statements, documents, exhibits, or other evidence is made to the court in which an appeal from a determination of an administrative agency is pending, and it is shown to the satisfaction of the court that the additional evidence is relevant and material and that there were reasonable grounds for the failure to offer the evidence in the hearing or proceeding, or that the evidence is relevant and material to the issues involved and was rejected or excluded by the agency, the court may order that the additional evidence be taken, heard, and considered by the agency on terms and conditions as the court may deem proper.

[¶ 17] As we have previously stated, the presence of an ignition key is not dispositive to the offense of actual physical control. Similarly, whether or not a vehicle is operable also is not dispositive of this offense. *See, e.g., Haverluk*, 2000 ND 178, ¶ 16, 617 N.W.2d 652 (stating "[w]e have frequently upheld APC convictions even when the vehicles were inoperable"). Furthermore, Rist's counsel explains that no evidence about the inoperability of the pickup was offered at the administrative hearing because he first learned about the issue when the deputy testified. We conclude this explanation does not provide "reasonable grounds for the failure to offer evidence in the hearing," and therefore, the standard for remanding the matter for consideration of additional evidence under N.D.C.C. § 28–32–45 has not been met.

### IV

[¶ 18] We reverse the district court judgment and reinstate the hearing officer's suspension of Rist's license.

[¶ 19] DALE V. SANDSTROM, CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and WILLIAM A. NEUMANN, JJ., concur.