2003 ND 197

**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Mark John WALTZ, Defendant and Appellant.**

**Nos. 20030119, 20030120, 20030121.**

Supreme Court of North Dakota.

Dec. 19, 2003.

Thomas H. Falck, Jr., Assistant State's Attorney (appeared), and third-year law student Carmell Berry (argued), under the Rule on Limited Practice of Law by Law Students, Grand Forks, for plaintiff and appellee.

Steven M. Light, Larivee & Light, Grand Forks, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Mark John Waltz appealed from criminal judgments entered against him for possession of drug paraphernalia, possession of methamphetamine with intent to deliver, and possession of marijuana in a motor vehicle. We affirm.

I

[¶ 2] On March 11, 2002, Officers Lampi and Riedinger of the Grand Forks Police Department responded to a report that a person was passed out in a vehicle at the Taco John's on Gateway Drive in Grand Forks. They found Waltz sitting in the driver's side of his running van at the drive-up window with his window open, his check book in one hand and a pen in the other, his head slumped down to his chest, the car in drive, and his foot on the brake. Officer Lampi parked his patrol car in front of Waltz's van, approached the van, reached inside and put it in "park," and shut off the engine. Waltz awoke as Officer Lampi reached over him to remove the keys.

[¶ 3] Officer Lampi asked Waltz if he knew where he was and, after looking around, Waltz answered he was in Grand Forks. Officer Lampi asked him where in Grand Forks and, after looking around again, Waltz stated he was at Taco John's. In response to further questioning by Officer Lampi, Waltz stated he was sleeping because he was really tired after bringing his brother to a long-term care facility and was on his way to Fargo. Waltz stated he had not been drinking. Officer Lampi asked Waltz to step out of the vehicle to perform field sobriety tests.

[¶ 4] When Waltz was getting out of the vehicle, Officer Lampi noticed a knife in a case on Waltz's hip. Officer Lampi asked Waltz if he could pat him down and if he had any drugs, alcohol, or anything that could be used as a weapon. Waltz stated he had a flask in his pocket and gave it to Officer Lampi. Waltz agreed to Officer Lampi's request for the pat-down. During the pat-down, Officer Lampi found two lighters and a two-inch long silver container that looked like a pill case. Officer Lampi then escorted Waltz to the patrol car to complete the field sobriety tests. Officer Lampi testified Waltz was "a little sideway, stumbly" as he escorted him down the driveway, which had patches of ice, to the patrol car.

[¶ 5] Officer Lampi placed Waltz in the back seat of the patrol car, read him his *Miranda* rights, and conducted three field sobriety tests. Officer Lampi asked Waltz to recite the alphabet from F to Y (Waltz recited it from F to Z); he asked Waltz to count backwards from 86 to 68 (Waltz counted 86, 87, 85 and continued down to 68); and he administered a finger dexterity test which Waltz could not complete. Officer Lampi concluded Waltz failed the

sobriety tests and arrested him for actual physical control of a vehicle while under the influence of drugs or another substance.

[¶ 6] Before the field sobriety tests were completed, the officers had discovered a white powdery substance inside the silver container. Waltz claimed it was a concoction his mother or grandmother made for him. Following the arrest, the officers searched Waltz's van and found drug paraphernalia and baggies containing a white powdery substance inside a backpack in the back seat, four metal flasks containing liquid inside an open cooler, and a lemonade container with a green, leafy substance inside. Waltz was taken to the Grand Forks Police Department where he refused to take a chemical test. Subsequent tests showed the white powdery substance in the baggies and the silver container was methamphetamine.

[¶ 7] Waltz was charged with possession of drug paraphernalia, possession of methamphetamine with intent to deliver, and possession of marijuana in a motor vehicle. He moved to suppress the evidence discovered during the searches, claiming his constitutional rights were violated. The district court found the evidence discovered in the van was admissible because it was discovered during a search incident to a lawful arrest. The court concluded Officer Lampi improperly opened the silver container without a warrant. However, it found the contents were admissible because they would have been discovered in the subsequent lawful search of Waltz's van. On appeal, Waltz contends all the evidence should have been suppressed because there was no probable cause for the arrest.

## II

[¶ 8] The Fourth Amendment of the United States Constitution, applica-
ble to the states through the Fourteenth Amendment, and Article I, Section 8 of the North Dakota Constitution require searches and seizures to be reasonable. Absent an exception, "all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). A warrantless search is unreasonable unless it falls within an exception to the warrant requirement. *State v. Tognotti*, 2003 ND 99, ¶ 7, 663 N.W.2d 642. "The State has the burden of showing that a warrantless search falls within an exception to the warrant requirement." *State v. Avila*, 1997 ND 142, ¶ 16, 566 N.W.2d 410. This Court, following the United States Supreme Court, has held "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile," including any containers found therein. *State v. Hensel*, 417 N.W.2d 849, 852 (N.D.1988) (quoting *New York v. Belton*, 453 U.S. 454, 460, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981)). On the other hand, "evidence seized [incident] to an invalid arrest is inadmissible" if it does not fall within another exception to the exclusionary rule. *State v. Haverluk*, 2000 ND 178, ¶ 9, 617 N.W.2d 652. Therefore, whether the evidence discovered in the van should have been suppressed in this case depends upon whether there was probable cause to arrest Waltz. Waltz contends there was no probable cause for Officer Lampi to arrest him for actual physical control of a motor vehicle while under the influence of drugs or another substance.

[¶ 9] Whether probable cause exists is a question of law fully reviewable on appeal. *Sonsthagen v. Sprynczynatyk*, 2003 ND 90, ¶ 7, 663 N.W.2d 161. Howev-

er, in assessing a trial court's decision regarding suppression:

> We will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence.

*State v. Tollefson,* 2003 ND 73, ¶ 9, 660 N.W.2d 575 (quoting *State v. Heitzmann,* 2001 ND 136, ¶ 8, 632 N.W.2d 1).

[¶ 10] Probable cause to arrest exists when an officer has knowledge that would give a prudent person reasonable grounds to believe an offense has been or is being committed. *State v. Overby,* 1999 ND 47, ¶ 13, 590 N.W.2d 703. The officer does not have to "possess knowledge of facts sufficient to establish guilt." *Hensel,* 417 N.W.2d at 852. In determining whether probable cause to arrest existed, we evaluate the totality of the circumstances. *Sonsthagen,* 2003 ND 90, ¶ 17, 663 N.W.2d 161.

[¶ 11] Section 29–06–15(1)(a), N.D.C.C., authorizes an officer to make a warrantless arrest when there is probable cause to believe a suspect has committed a public offense in the officer's presence. Waltz was arrested for being in actual physical control of a vehicle while under the influence of drugs or another substance, which is a violation of N.D.C.C. § 39–08–01(1)(c). "[T]he essential elements of actual physical control are '(1) the defendant is in actual physical control of a motor vehicle on a highway or upon public or private areas to which the public has a right of access; and (2) the defendant was under the influence of intoxicating liquor, drugs, or other substances.'" *Rist v. N.D. Dep't of Transp.,* 2003 ND 113, ¶ 14, 665 N.W.2d 45 (quoting *Haverluk,* 2000 ND 178, ¶ 15, 617 N.W.2d 652); *see* N.D.C.C. § 39–08–01. Cases evaluating probable cause to arrest for actual physical control of a vehicle while under the influence of alcohol are relevant in assessing probable cause for actual physical control while under the influence of drugs. *Cf. Sonsthagen,* 2003 ND 90, ¶ 19, 663 N.W.2d 161 ("In determining what is necessary to establish probable cause to arrest a driver for driving while under the influence of drugs, we are guided by what we have stated is necessary to arrest a driver for driving while under the influence of alcohol").

### A.

[¶ 12] Waltz was passed out in his vehicle while it was still running in front of the drive-up window of a fast food restaurant; he was slow answering questions regarding where he was; he had difficulty walking to the patrol car; and he failed the field sobriety tests. This is not a case of a person intentionally resting in his vehicle. Instead, the facts indicate Waltz inadvertently passed out or fell asleep while waiting in his running car at the drive-up window of a restaurant. Waltz claimed he fell asleep because he was really tired. However, assuming Waltz's explanation was true, it is nevertheless reasonable to believe that a driver falling asleep in a running vehicle at the drive-up window of a restaurant indicates impairment. Waltz's difficulty answering basic questions regarding where he was is further indication of mental impairment.

[¶ 13] We have previously held staggering is a relevant factor indicating impairment. *Baer v. Dir., N.D. Dep't of Transp.,* 1997 ND 222, ¶ 13, 571 N.W.2d 829; *see also State v. Salhus,* 220 N.W.2d 852, 855 (N.D.1974). Waltz claims his difficulty walking is easily explained because

the driveway was slippery due to ice patches. When evaluating probable cause to search, we have stated that even though conduct may have an innocent explanation, "probable cause is the sum total of layers of information and the synthesis of what the police have heard, what they know, and what they observed as trained officers." *State v. Ringquist*, 433 N.W.2d 207, 215–16 (N.D.1988) (quoting *United States v. Edwards*, 577 F.2d 883, 895 (5th Cir. 1978) (en banc)). Similarly, Waltz's explanation for his difficulty walking does not preclude suspicion of impairment. Rather, Officer Lampi's testimony indicates he determined Waltz's difficulty walking was a result of being impaired either because "he was tired ... or something else." There is no indication from Officer Lampi's testimony that Waltz had difficulty walking because he slipped on any of the ice patches on the driveway.

[¶ 14] Waltz contends his failure to successfully complete the field sobriety tests does not support a finding of probable cause. Officer Lampi testified the field sobriety tests "indicate sobriety or [whether the person is] under the influence of things." We have previously evaluated a person's failure to successfully complete field sobriety tests as an indicator of physical or mental impairment. *Sonsthagen*, 2003 ND 90, ¶ 22, 663 N.W.2d 161; *see also Kahl v. Dir., N.D. Dep't of Transp.*, 1997 ND 147, ¶ 17, 567 N.W.2d 197 (failing field sobriety tests is relevant in determining probable cause). Taken together, the fact Waltz was passed out in his vehicle, was slow answering questions regarding his location, had difficulty walking to the patrol car, and failed the field sobriety tests indicates he was physically or mentally impaired to an extent which rendered him incapable of safely driving. *See* N.D.C.C. § 39–08–01(1)(c).

[¶ 15] Furthermore, there was reason to believe Waltz's impairment was caused by alcohol, drugs, or another substance. Officer Lampi testified there was no odor of alcohol and Waltz did not have bloodshot eyes. Further, an SD2 breathalyzer revealed no alcohol in Waltz's system. However, Waltz did produce a flask and the pat-down search revealed a two-inch pill container. Although these items alone do not establish probable cause, they do create suspicion Waltz was impaired because he was under the influence of some substance. When this is considered along with Waltz's level of impairment, it is reasonable to conclude Waltz was under the influence of drugs or another substance. *See People v. Munsey*, 18 Cal.App.3d 440, 95 Cal.Rptr. 811, 815 (1971) ("The probability that defendant's condition was produced by alcohol having been tentatively eliminated, it became reasonable to entertain and hold a strong suspicion that defendant was under the influence of a narcotic").

[¶ 16] Probable cause does not require information that would establish guilt. In this case, Waltz was clearly impaired. His level of impairment combined with the surrounding facts and circumstances created reasonable grounds to believe he was under the influence of drugs or another substance. Section 39–08–01(1)(c), N.D.C.C., provides:

1. A person may not drive or be in actual physical control of any vehicle upon a highway or upon public or private areas to which the public has a right of access for vehicular use in this state if any of the following apply:

. . . .

c. That person is under the influence of any drug or substance or combination of drugs or substances to a degree which renders that person incapable of safely driving.

Therefore, we hold there was probable cause to arrest Waltz for actual physical

control of a vehicle while under the influence.

## III

[¶ 17] Waltz contends the evidence discovered in the silver container should have been suppressed because the officers' search of the container was beyond the scope of his consent to the pat-down. Evidence obtained by unlawful police conduct is admissible if the prosecution proves by a preponderance of the evidence that the evidence would have inevitably been discovered by lawful means. *State v. Olson,* 1998 ND 41, ¶ 16, 575 N.W.2d 649 (citing *State v. Johnson,* 531 N.W.2d 275, 279 (N.D.1995) and *Nix v. Williams,* 467 U.S. 431, 444, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)). The substance discovered in the container was not necessary to establish probable cause to arrest Waltz. *See Overby,* 1999 ND 47, ¶ 13, 590 N.W.2d 703; *Rawlings v. Kentucky,* 448 U.S. 98, 111 & n. 6, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980) ("Where the formal arrest followed quickly on the heels of the challenged search of petitioner's person, we do not believe it particularly important that the search preceded the arrest rather than vice versa," if the fruits of the search were not necessary to support probable cause to arrest). Assuming this evidence was initially obtained by an invalid search, it would have inevitably been discovered in the valid search incident to Waltz's arrest. *See Olson,* at ¶ 17.

[¶ 18] For the reasons stated herein, the judgments of the district court are affirmed.

[¶ 19] DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING, and CAROL RONNING KAPSNER, JJ., concur.