2001 ND 140

**Roger D. LAPP, Petitioner and Appellee,**

v.

**North Dakota DEPARTMENT OF TRANSPORTATION, Respondent and Appellant.**

No. 20010040.

Supreme Court of North Dakota.

July 25, 2001.

Reid Alan Brady (argued) and Andrew Moraghan, Assistant Attorneys General, Bismarck, ND, for respondent and appellant.

Chad R. McCabe of Vinje Law Firm, Bismarck, ND, for petitioner and appellee.

NEUMANN, Justice.

[¶ 1]  The North Dakota Department of Transportation ("the department") appealed from a district court judgment reversing the administrative hearing officer's decision suspending Roger D. Lapp's driver's license for ninety-one days.  We reverse the district court judgment and reinstate the hearing officer's suspension of Lapp's license.

## I

[¶ 2] On July 16, 2000, a security guard for Bismarck Mandan Security called the Bismarck Law Enforcement Center and reported an individual slumped over the steering wheel of his vehicle that was parked in a parking lot. At 4:47 a.m. a Bismarck police officer responded to a dispatch call to the parking lot. The security guard told the officer he saw Lapp slumped over the steering wheel of his idling pickup and tried unsuccessfully to communicate with Lapp by knocking on the pickup window. The police officer also saw Lapp slumped over the steering wheel of his pickup. The vehicle was still running, and the headlights were on. The officer knocked on the window. Lapp sat up and looked at the officer through the window. The officer noticed Lapp's eyes were glossy. It is disputed whether the officer opened the pickup door or whether Lapp and the officer opened the door at the same time, but after the door was opened, the officer asked Lapp if he had identification. Lapp showed the officer his driver's license. The officer asked Lapp whether he needed medical attention, and Lapp said he did not. The officer asked Lapp whether he had been drinking, and Lapp said he had consumed a few beers.

[¶ 3] The officer asked Lapp to get out of the pickup. Lapp agreed to take field sobriety tests. Lapp failed the one-leg stand and walk-and-turn tests. After the officer recited the implied consent advisory, Lapp submitted to an onsite screening test. The test estimated Lapp's blood-alcohol concentration was .16 percent. The officer arrested Lapp for being in actual physical control of a vehicle while under the influence of alcohol. An Intoxilyzer test given to Lapp at the police station showed Lapp's blood-alcohol content was .12 percent.

[¶ 4] Lapp requested an administrative hearing. The hearing officer concluded the police officer had reasonable grounds for approaching Lapp because Lapp was slumped over the steering wheel of his vehicle with the engine running. The hearing officer also concluded the police officer had probable cause to believe Lapp had been driving or was in actual physical control of a vehicle while under the influence of alcohol. The hearing officer suspended Lapp's driver's license for ninety-one days.

[¶ 5] Lapp appealed to the district court. The district court reversed the hearing officer's decision, finding the police officer opened the door of Lapp's vehicle without either a reasonable suspicion of criminal activity or a community caretaking function. The department appealed.

## II

[¶ 6] The Administrative Agencies Practice Act, N.D.C.C. ch. 28–32, governs the review of an administrative agency decision to suspend a driver's license. *Wetzel v. N.D. Dep't of Transp.*, 2001 ND 35, ¶ 9, 622 N.W.2d 180. Our standard of review is the same standard applied by the district court. N.D.C.C. § 28–32–21. We review the record compiled by the agency and affirm the agency's decision unless: 1) the decision is not in accordance with the law; 2) the decision violates the constitutional rights of the appellant; 3) provisions of the Administrative Agencies Practice Act were not complied with in the proceedings before the agency; 4) the agency's rules or procedures have not afforded the appellant a fair hearing; 5) the agency's findings are not supported by a preponderance of the evidence; or 6) the conclusions of law and the agency's decision are not supported by its findings of fact. N.D.C.C. § 28–32–19.

*Wetzel,* 2001 ND 35, ¶ 9, 622 N.W.2d 180. We give great deference to administrative rulings. *Id.* at ¶ 9. When reviewing the findings of an administrative agency, we do not substitute our judgment for that of the agency, but instead determine whether a reasonable mind could have determined that the factual conclusions were proven by the weight of the evidence presented. *Id.* at ¶ 9.

III

[¶ 7] The Fourth Amendment to the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Article I, § 8 of the North Dakota Constitution, guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

[¶ 8] We have explained, however, that not every law enforcement-citizen encounter is an investigative stop or a seizure deserving of Fourth Amendment protection. *City of Grand Forks v. Zejdlik,* 551 N.W.2d 772, 774 (N.D.1996); *see State v. Halfmann,* 518 N.W.2d 729, 730 (N.D.1994) (discussing three tiers of encounters: arrests which must be supported by probable cause; investigative, or "Terry," stops which must be supported by a reasonable and articulable suspicion; and community caretaking encounters which do not constitute Fourth Amendment seizures). A seizure occurs, and Fourth Amendment protection is afforded a citizen, only when the officer has restrained the citizen's liberty by means of physical force or show of authority. *City of Fargo v. Ovind,* 1998 ND 69, ¶ 7, 575 N.W.2d 901. It is not a Fourth Amendment seizure for a police officer to approach and talk with a person in a public place, including a stopped vehicle. *State v. DeCoteau,* 1999 ND 77, ¶ 19, 592 N.W.2d 579; *City of Fargo v. Sivertson,* 1997 ND 204, ¶ 9, 571

N.W.2d 137. An officer's approach to a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response. *DeCoteau,* 1999 ND 77, ¶ 19, 592 N.W.2d 579; *see Sivertson,* 1997 ND 204, ¶ 9, 571 N.W.2d 137 (stating that "the law distinguishes between approaching an already stopped vehicle and stopping a moving one").

[¶ 9] On appeal, the department argues the hearing officer's decision to suspend Lapp's driver's license is supported by alternative justifications for the encounter between the officer and Lapp: the officer had a reasonable and articulable suspicion of criminal activity, and the officer was acting within his community caretaker role.

A

[¶ 10] The department contends the officer had a reasonable and articulable suspicion Lapp was in actual physical control of his vehicle while under the influence of alcohol.

[¶ 11] In determining whether the officer had a reasonable and articulable suspicion to justify the investigatory stop, the test is whether a reasonable person in the officer's position would be justified by some objective manifestation in suspecting potential criminal activity. *State v. Gregg,* 2000 ND 154, ¶ 27, 615 N.W.2d 515. The reasonable and articulable suspicion standard requires more than a "mere hunch," but less than probable cause. *State v. Loh,* 2000 ND 188, ¶ 5, 618 N.W.2d 477. Reasonable and articulable suspicion can be provided by reports from other officers, tips from informants, and from the officer's own observations. *State v. Garrett,* 1998 ND 173, ¶ 30, 584 N.W.2d 502. We assess the totality of the circum-

stances in evaluating the validity of a stop. *In re T.J.K.,* 1999 ND 152, ¶ 7, 598 N.W.2d 781.

[¶ 12] Here, assuming for now the absence of any community caretaking function, a stop arguably occurred when the police officer and Lapp opened the door of the pickup and the officer asked Lapp for identification. *See Borowicz v. N.D. Dep't of Transp.,* 529 N.W.2d 186, 188 (N.D.1995) (stating a stop arguably occurred when the police officer requested the driver open the vehicle door and produce a driver's license). However, by the time the officer opened the door, he had observed enough to give him reasonable, articulable suspicion of actual physical control. The officer was responding to a tip from the security guard, an identified informant. *See State v. Miller,* 510 N.W.2d 638, 642 (N.D.1994) (stating tips from identified callers are more reliable than tips from anonymous callers). The security guard indicated he had unsuccessfully tried to awaken Lapp. It was approximately 5:00 in the morning. Lapp's pickup was running and the headlights were on. The police officer saw Lapp slumped over the steering wheel. The officer had difficulty awakening Lapp. When Lapp did awake, the officer observed Lapp's glossy eyes.

[¶ 13] In his brief, Lapp argues these circumstances "describe a very large category of presumably innocent travelers, who would be subject to virtually random seizures were the Court to conclude that as little foundation as there was in this case could justify a seizure." However, the reasonable and articulable suspicion standard does not require an officer to rule out every potential innocent excuse for the behavior in question. *Kappel v. N.D. Dep't of Transp.,* 1999 ND 213, ¶ 10, 602 N.W.2d 718. Probabilities, not certainties, are used in determining reasonable and articulable suspicion. *Id.* at ¶ 10. Based

on the circumstances in this case, an officer might reasonably have suspected Lapp was in actual physical control of his pickup while under the influence of alcohol.

**B**

[¶ 14] In addition to the officer's reasonable and articulable suspicion of criminal activity, the encounter between the officer and Lapp can also be independently supported on the basis of the officer's community caretaker role. Law enforcement officers frequently act in the role of community caretaker. *State v. DeCoteau,* 1999 ND 77, ¶ 19, 592 N.W.2d 579. Officers' actions under the community caretaker role differ from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. *Id.* at ¶ 19. Community caretaking justifies law enforcement contact without reasonable suspicion of unlawful conduct. *Id.* at ¶ 20. If, when approaching a parked vehicle in a caretaker encounter, an officer discovers something causing a reasonable suspicion or probable cause, the officer may further investigate, seize, and even arrest. *City of Fargo v. Sivertson,* 1997 ND 204, ¶ 9, 571 N.W.2d 137. A caretaking encounter does not foreclose an officer from making observations that lead to a reasonable and articulable suspicion. *State v. Langseth,* 492 N.W.2d 298, 300 (N.D.1992).

[¶ 15] It was reasonable for the police officer to be concerned for Lapp's safety. The security guard told the officer he had unsuccessfully tried to awaken Lapp for ten minutes by knocking on the vehicle window. The police officer observed Lapp slumped over the steering wheel. Lapp's vehicle was running and the headlights were on. The officer had tapped on Lapp's window twice within two minutes before Lapp awoke. When Lapp awoke, the officer noticed his glossy eyes. The

officer opened the door and asked Lapp for identification. Lapp showed the officer his driver's license. The officer asked Lapp whether he needed medical attention. Lapp said he did not.

[¶ 16] The encounter was within the officer's role as a community caretaker. Until the officer conversed with Lapp and ascertained Lapp did not need medical attention, the officer was justified in investigating Lapp's condition.

### IV

[¶ 17] The evidence in the record from the administrative hearing supports the hearing officer's conclusion that the police officer had reasonable grounds to investigate the parked vehicle and, as a result of that investigation, had reasonable grounds to believe that Lapp was in actual physical control of the vehicle in violation of section 39-08-01, N.D.C.C. We reverse the district court's judgment and reinstate the hearing officer's suspension of Lapp's license.

[¶ 18] GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING and DALE V. SANDSTROM, JJ., and LAWRENCE A. LECLERC, D.J., concur.

[¶ 19] The Honorable LAWRENCE A. LECLERC, D.J., sitting in place of KAPSNER, J., disqualified.