2010 ND 112

**CITY OF MANDAN, Plaintiff
and Appellee**

v.

**Scott A. GERHARDT, Defendant
and Appellant.**

No. 20090274.

Supreme Court of North Dakota.

June 15, 2010.

Daniel J. Nagle, City Prosecutor, Mandan, N.D., for plaintiff and appellee.

Chad Rory McCabe (argued) and Stanley John Boehm (appeared), Bismarck, N.D., for defendant and appellant.

MARING, Justice.

[¶ 1] Scott Gerhardt appeals from the criminal judgment entered after a jury convicted him of the charge of actual physical control. Gerhardt asserts on appeal the district court erred in denying his pretrial motion to suppress because the arresting officer obtained evidence in violation of his constitutional right to be free from unreasonable searches and seizures. Because we conclude the arresting police officer's initial approach and contact with Gerhardt was properly considered a community caretaking encounter and, based on this encounter, the officer also developed reasonable and articulable suspicion necessary for a valid investigatory stop, we affirm.

I

[¶ 2] In its order denying Gerhardt's pretrial suppression motion, the district court made factual findings regarding the police officer's approach and stop of Gerhardt. On January 17, 2009, a Mandan police officer was on patrol during the early morning hours. At approximately 2 a.m., the officer saw a pickup parked in an almost empty vacant lot in downtown Mandan. The officer noted what he believed to be a person in the driver's seat leaning toward the center of the vehicle. About a half hour later, the officer again observed the pickup in the same location and decided to check on the individual in the vehicle. The officer approached the vehicle and saw a man in the driver's seat, and the pickup's engine was running. The person observed in the driver's seat was later identified as Gerhardt.

[¶ 3] The person's eyes were closed, and the officer began knocking and yelling. The officer testified that when Gerhardt opened his eyes and responded to the officer, he appeared confused "for many seconds." Gerhardt opened the window about three inches and said something to the effect that he was "taking off." The officer told Gerhardt that he was not leaving and then told Gerhardt to shut the pickup off and open the door. Gerhardt complied.

[¶ 4] Additionally, the officer testified that after Gerhardt had opened the door, the officer noticed bloodshot eyes, thick speech, and learned that Gerhardt had been drinking. The officer also noticed an odor of an alcoholic beverage after Gerhardt stepped out of the vehicle. After the officer conducted field sobriety testing, the officer charged Gerhardt by a uniform complaint and summons with actual physical control of a motor vehicle while under the influence.

[¶ 5] In March 2009, Gerhardt requested transfer from Mandan municipal court to the district court, asserting his right to a jury trial. In April 2009, Gerhardt filed his motion to suppress evidence, arguing Gerhardt was illegally stopped, searched, and seized, and the State timely responded. On May 29, 2009, the district court held a hearing on Gerhardt's suppression motion. In a July 6, 2009, order, the court denied Gerhardt's motion. In August 2009, the district court held a jury trial. Gerhardt was convicted by a jury of the offense and was sentenced by the court.

II

[¶ 6] Gerhardt argues the district court erred in denying his motion to suppress

evidence because the police officer obtained evidence as a result of an unlawful stop and seizure, in violation of the Fourth Amendment of the United States Constitution and Article I, Section 8 of the North Dakota Constitution.

[¶ 7] A person alleging a violation of Fourth Amendment rights has the initial burden of establishing a prima facie case of illegal seizure. *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 6, 639 N.W.2d 478 (citing *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 6, 571 N.W.2d 137). "After the person alleging a Fourth Amendment violation has made a prima facie case, the burden of persuasion is shifted to the State to justify its actions." *Id.* When reviewing a district court's decision on a motion to suppress, this Court applies a deferential standard of review:

"[This Court] will defer to a trial court's findings of fact in the disposition of a motion to suppress. Conflicts in testimony will be resolved in favor of affirmance, as we recognize the trial court is in a superior position to assess credibility of witnesses and weigh the evidence. Generally, a trial court's decision to deny a motion to suppress will not be reversed if there is sufficient competent evidence capable of supporting the trial court's findings, and if its decision is not contrary to the manifest weight of the evidence."

*State v. Olson*, 2007 ND 40, ¶ 7, 729 N.W.2d 132 (quoting *State v. Torkelsen*, 2006 ND 152, ¶ 8, 718 N.W.2d 22). "Questions of law, such as the ultimate conclusion of whether the facts support a reasonable and articulable suspicion, are fully reviewable on appeal." *State v. Parizek*, 2004 ND 78, ¶ 7, 678 N.W.2d 154.

[¶ 8] Under the Fourth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, and Article I, Section 8 of the North Dakota Constitution, all searches and seizures must be reasonable. *Abernathey v. Department of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485; *Lapp v. North Dakota Dep't of Transp.*, 2001 ND 140, ¶ 7, 632 N.W.2d 419. This Court has identified permissible types of law enforcement-citizen encounters: (1) arrests, which must be supported by probable cause; (2) *Terry* stops, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), seizures which must be supported by a reasonable and articulable suspicion of criminal activity; and (3) community caretaking encounters, which do not constitute Fourth Amendment seizures. *Olson*, 2007 ND 40, ¶ 9, 729 N.W.2d 132; *Torkelsen*, 2006 ND 152, ¶ 10, 718 N.W.2d 22. This Court has also recognized that "it is not a seizure for an officer to walk up to and talk to a person in a public place." *Jerome*, 2002 ND 34, ¶ 5, 639 N.W.2d 478 (citing *State v. Steinmetz*, 552 N.W.2d 358, 359 (N.D.1996)). "Within the context of the Fourth Amendment, a seizure occurs 'when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen.'" *Olson*, at ¶ 9 (quoting *Jerome*, at ¶ 5). Here, the district court considered the initial encounter in the context of a community caretaking encounter and concluded the police officer's contact with Gerhardt was reasonable.

[¶ 9] Law enforcement officers frequently serve in the role of community caretakers. *State v. Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392; *Lapp*, 2001 ND 140, ¶ 14, 632 N.W.2d 419; *State v. DeCoteau*, 1999 ND 77, ¶ 19, 592 N.W.2d 579. In *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the United States Supreme Court described this community caretaking function as "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *See also State v. Washington*, 2007 ND 138,

¶ 11, 737 N.W.2d 382; *Rist v. North Dakota Dep't of Transp.*, 2003 ND 113, ¶ 9, 665 N.W.2d 45; *Boyd*, at ¶ 7.

[¶ 10] "Community caretaking allows law enforcement-citizen contact, including stops, without an officer's reasonable suspicion of criminal conduct." *Boyd*, 2002 ND 203, ¶ 7, 654 N.W.2d 392 (citing *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D.1996)). The law also distinguishes between law enforcement stopping a moving vehicle and approaching a vehicle that is already stopped. *See Rist*, 2003 ND 113, ¶ 8, 665 N.W.2d 45; *State v. Franklin*, 524 N.W.2d 603, 604 (N.D.1994); *State v. Halfmann*, 518 N.W.2d 729, 731 (N.D.1994).

> No seizure within the context of the Fourth Amendment occurs when an officer approaches a parked vehicle if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response. Not all citizen-law enforcement encounters implicate a citizen's Fourth Amendment rights; a seizure occurs only when a law enforcement officer, by means of physical force or show of authority, in some manner restrains the liberty of a citizen.

*Rist*, at ¶ 8 (quotation and citations omitted). Even a casual encounter, however, can evolve into a seizure when a reasonable person would view a law enforcement "officer's actions—if done by another private citizen—as threatening or offensive." *Boyd*, at ¶ 7 (citing *State v. Langseth*, 492 N.W.2d 298, 300 (N.D.1992)). "This may occur through an order, a threat, or a weapon display." *Id.* The officer may also develop a reasonable and articulable suspicion of unlawful conduct from the officer's initial community caretaking encounter. *Boyd*, at ¶ 7; *Lapp*, 2001 ND 140, ¶ 14, 632 N.W.2d 419.

[¶ 11] Where it is "obvious" that a citizen neither needs nor desires assistance, a law enforcement officer has no community caretaking role to fill. *Rist*, 2003 ND 113, ¶ 9, 665 N.W.2d 45; *Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478; *DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579. This Court, however, has also said that no such "obvious" situation is presented where an individual is slumped over a steering wheel. *See Rist*, at ¶¶ 9–11 (individual slumped behind the steering wheel with his chin in his chest); *Lapp*, 2001 ND 140, ¶¶ 14–15, 632 N.W.2d 419 (individual was slumped over vehicle's steering wheel with engine running); *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 773–75 (N.D.1996) (individual slumped over the steering wheel of an idling vehicle); *Franklin*, 524 N.W.2d at 605 (individuals parked at night in motel parking lot and slumped down in their seats). *See also* Wayne R. LaFave, *Search and Seizure* § 7.4(f) (4th ed. 2004) ("If the police find a person unconscious or disoriented and incoherent in a vehicle . . ., it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition.").

[¶ 12] In denying Gerhardt's motion to suppress, the district court stated the issue was whether the Mandan police officer was reasonable in approaching Gerhardt in the pickup and, after the initial contact, in refusing to let him leave without further investigation, which revealed Gerhardt was under the influence. The court concluded:

> In the present case, the initial contact with the defendant was a reasonable action. He was in a nearly deserted parking lot at 2 a.m. It was a January night and it would have been unreasonable for the office[r] not to check and determine if the occupant of the pickup was in need of assistance.
>
> When the officer noted confusion, he reasonably did further investigation be-

fore allowing the defendant to drive the pickup. That investigation provided probable cause for an arrest for actual physical control.

[¶ 13] Here, the district court concluded that the officer's stop and seizure of Gerhardt was precipitated by a legitimate community caretaking encounter and that the officer's further investigation before allowing the defendant to drive the pickup was reasonable. At the hearing on Gerhardt's suppression motion, the police officer testified that after returning a half hour later to the vacant snow- and ice-covered parking lot, he saw "the same silhouette of the same person in the same shape leaning towards the center of the vehicle from the driver's seat." The officer testified he "decided to check on it to make sure nothing was wrong." The officer drove into the parking lot and parked behind the vehicle without any emergency lights on. After walking up to the driver's side of the pickup, the officer noted the vehicle was running and that the man in the vehicle was not moving, other than he appeared to be breathing, and his eyes were closed. The officer then started knocking on the window and yelling "police." The police officer testified:

> The man finally started moving a bit but he didn't arouse at that time. I continued knocking and yelling, ordering the man to open the door. He finally opened his eyes and looked at me. He looked very confused. And that look of confusion lasted for awhile, several seconds. I yelled for an open window, I wanted to talk to him to make sure everything was okay. He opened the window about 3 inches or so. I told him to shut the vehicle off so while I was talking to him he didn't accidentally put it in reverse, put it in drive, whatever, drive over my feet, run into the vehicle behind me, whatever. I just wanted to talk to him, make sure he was okay before I cut him loose or whatever.

[¶ 14] The officer testified that after Gerhardt aroused and looked at him, Gerhardt looked "very confused and continued to look very confused." The officer also testified that Gerhardt looked confused "for many seconds," "looked genuinely out of it," and "a person under normal circumstances would have been awake to the extent that they would have known where they were, who I was, [and] what was going on ...." The officer testified that after Gerhardt opened the window about three inches, the officer told him to shut the vehicle off and open the door. The officer also repeated his earlier testimony and further testified:

> I yelled for him, open the window. He opened the window about 3 inches. I told him several times to shut the vehicle off and open the door. He told me something to the effect that he was taking off. At that time I was not satisfied everything was okay, I told him he wasn't. I told him to shut the pickup off and open the door because I wanted to investigate what was going on here. He finally shut the pickup off and opened the door. I noted his eyes were very bloodshot, his speech was thick and remained so more often than not throughout my interaction with him. He also reasserted his warning to leave ....

[¶ 15] On appeal, Gerhardt argues that a stop occurred by the officer's actions when the officer yelled "police," knocked on Gerhardt's window, and "demanded" Gerhardt open the door, roll down the window, and then shut off the pickup and open the door. Gerhardt asserts that the officer failed to establish that criminal activity was afoot or that the community caretaking function required an investigative stop of Gerhardt. We disagree.

[¶ 16] In *Lapp*, 2001 ND 140, ¶¶ 14–16, 632 N.W.2d 419, this Court concluded that the law enforcement officer-citizen encoun-

ter could also be independently supported based on the officer's "community caretaker role." We concluded it was reasonable for the officer to be concerned for Lapp's safety where a security guard had been unable to wake up Lapp despite knocking on the vehicle's window for ten minutes, the officer observed Lapp slumped over the steering wheel with the vehicle running and headlights on, and the officer twice tapped on the window before Lapp woke up. *Id.* at ¶ 15. After Lapp awoke, the officer opened the door and asked for identification and asked whether he needed medical attention. *Id.* We concluded the officer was justified in his efforts to ascertain Lapp's condition. *Id.* at ¶ 16.

[¶ 17] Likewise, in *Rist*, 2003 ND 113, ¶ 11, 665 N.W.2d 45, this Court concluded that a deputy's shouts were part of a welfare check. We accordingly refused to construe the deputy's statement of "Sheriff's Department, wake up!" as a show of authority or the order to do something removing the officer's actions from the community caretaking role. *Id.* Further, in *Abernathey*, 2009 ND 122, ¶ 11, 768 N.W.2d 485, we emphasized that an "officer's request that a person exit a parked vehicle does not invariably result in a 'seizure' of the occupant for Fourth Amendment purposes." When an officer encounters a person "whose state of consciousness prevents a conversational inquiry from occurring," the officer must decide the actions necessary to get the person to respond and thus may need to approach a nonresponsive person "differently from a person who is conscious and able to converse with the officer." *Rist*, at ¶ 10.

[¶ 18] From the record, the officer observed the pickup in an empty lot at 2 a.m. with a person leaning or slumped toward the center and the vehicle was still there almost a half hour later. The officer testified that he approached the pickup to make sure that nothing was wrong and to check on the welfare of the individual in the pickup. We conclude that, given this was an early January morning and the apparent lack of movement of the person within the pickup, the officer's subsequent approach of the vehicle, yelling, and rapping on the window was not only reasonable, but was a community caretaking function rather than a "seizure."

[¶ 19] When an officer learns something during a community caretaking encounter that creates a reasonable suspicion or probable cause, the encounter can lead to further investigation, seizure, and even arrest. *See Sivertson*, 1997 ND 204, ¶ 9, 571 N.W.2d 137 (citing *Zejdlik*, 551 N.W.2d at 775); *see also Rist*, 2003 ND 113, ¶ 12, 665 N.W.2d 45. While community caretaking encounters may be described as "totally divorced" from an officer's investigation, "investigative stops of automobiles and their occupants for suspected violations of law may be upheld if an officer has at least a reasonable suspicion that the motorist has violated the law or probable cause to believe the motorist has done so." *Washington*, 2007 ND 138, ¶ 11, 737 N.W.2d 382.

[¶ 20] In *Abernathey*, 2009 ND 122, ¶ 16, 768 N.W.2d 485 (discussing *Franklin*, 524 N.W.2d at 605) (citations omitted), this Court explained:

"[I]f an officer learns something during a public encounter with a person that causes a reasonable suspicion or probable cause, the encounter can justify further investigation, seizure, and even arrest. A public encounter does not foreclose the officer from making observations that reasonably lead to further action." A law enforcement officer has a reasonable and articulable suspicion that a law has been or is being violated if a reasonable person in the officer's position would be justified

by some objective manifestation to suspect potential criminal activity.

 [¶ 21] Here, upon knocking on the window and yelling police, the officer observed that Gerhardt appeared very confused "for many seconds" and was "genuinely out of it." These observations, combined with the officer's initial observations of the pickup in an empty lot at 2:00 a.m. in January with a person leaning or slumped toward the center and the vehicle still there almost a half hour later, would give the officer a reasonable and articulable suspicion that Gerhardt was potentially impaired by alcohol or drugs. "Probabilities, not hard certainties, are used in determining reasonable suspicion." *State v. Decoteau*, 2004 ND 139, ¶ 13, 681 N.W.2d 803 (citing *Lapp*, 2001 ND 140, ¶ 13, 632 N.W.2d 419). Under the totality of the circumstances, in stopping Gerhardt from just "taking off," the officer was acting on more than a "mere hunch," but rather had a reasonable and articulable suspicion of potential criminal activity afoot.

[¶ 22] We conclude the district court correctly decided that during the initial encounter with Gerhardt, the officer was engaged in a community caretaking function and that subsequent observations gave the officer the requisite reasonable and articulable suspicion to detain Gerhardt in an investigatory stop. We therefore hold Gerhardt's rights under U.S. Const. amend. IV and N.D. Const. art. I, § 8 were not violated, and we affirm the district court's decision to deny Gerhardt's motion to suppress.

### III

[¶ 23] The criminal judgment is affirmed.

[¶ 24] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.

[¶ 25] The Honorable WILLIAM F. HODNY, S.J., sitting in place of SANDSTROM, J., disqualified.