# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

---

2019 ND 153

---

Bryan Andrew Bridgeford,                                                    Appellee

v.

Thomas Sorel, Director, Department of Transportation,            Appellant

---

No. 20180390

---

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

REVERSED AND REINSTATED.

Opinion of the Court by Jensen, Justice.

Mark A. Friese (argued) and Drew J. Hushka (on brief), Fargo, ND, for appellee.

Douglas B. Anderson, Office of Attorney General, Bismarck, ND, for appellant.

**Jensen, Justice.**

[¶1]    The Department of Transportation ("Department") appeals from a district court judgment reversing an administrative hearing officer's decision to suspend Bryan Andrew Bridgeford's driving privileges for a period of 91 days.  The Department asserts the district court erred in determining a law enforcement officer was not within a recognized exception to the warrant requirement of the Fourth Amendment when the officer entered Bridgeford's vehicle after he failed to respond to the officer's actions outside the vehicle.  Because we hold the community caretaker exception applied and allowed the warrantless entry into Bridgeford's vehicle, we reverse the judgment and reinstate the Department's suspension of Bridgeford's driving privileges.

I

[¶2]    On June 15, 2018, at 1:38 a.m., a West Fargo police officer observed Bridgeford in the driver's seat of a running vehicle parked in a gas station parking lot. Bridgeford did not appear to be awake and was unresponsive when the officer approached the driver's door of Bridgeford's vehicle.  In an attempt to wake Bridgeford, the officer knocked loudly on the window and raised his voice for approximately 15 seconds.  Bridgeford did not respond to the attempts to wake him up from outside the vehicle.  The officer then opened the vehicle's unlocked door, grabbed Bridgeford's shoulder, and shook Bridgeford until he woke up.  The officer testified he could smell an odor of alcohol after opening the door, he observed Bridgeford had slurred speech and bloodshot eyes, and Bridgeford admitted to consuming multiple beers.  After Bridgeford failed several field sobriety tests, the officer placed Bridgeford under arrest for driving under the influence of alcohol, actual physical control.  Bridgeford submitted to a chemical breath test, which established a blood alcohol level of 0.178.

[¶3]    An administrative hearing was held to consider whether Bridgeford's driving privileges should be suspended.  At the hearing, Bridgeford argued the officer's warrantless entry into the vehicle was in violation of the Fourth Amendment, and any evidence acquired subsequent to the entry into the vehicle was inadmissible.  During the hearing, the officer testified he was not investigating a crime when he came into contact with Bridgeford, but was "checking on him" because Bridgeford was sleeping in his car, and the vehicle was running.  The hearing officer found the officer properly entered the vehicle after Bridgeford failed to respond to attempts to get his attention from outside the vehicle.  Bridgeford's driving privileges were revoked for a period of 91 days. Bridgeford appealed to the district court.  The court reversed the hearing officer's decision after concluding the entry into Bridgeford's vehicle was a search, that no exception to the requirement for a warrant applied, and any evidence gathered subsequent to the entry into the vehicle was required to be excluded from evidence.

II

[¶4]    This Court reviews an administrative revocation of a driver's license under N.D.C.C. § 28-32-46. *Olson v. N.D. Dep't of Transp.*, 2018 ND 94, ¶ 8, 909 N.W.2d 676.  "In an appeal from a district court's review of an administrative agency's decision, we review the agency's decision." *Haynes v. Dir., Dep't of Transp.*, 2014 ND 161, ¶ 6, 851 N.W.2d 172.  This Court will affirm an administrative agency's order unless:

> 2. The order is in violation of the constitutional rights of the appellant.
> . . . .
> 5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
> 6. The conclusions of law and order of the agency are not supported by its findings of fact.

N.D.C.C. § 28-32-46.

[¶5]    Rather than making independent findings of fact or substituting our judgment for that of the agency, our review is confined to determining whether "a reasoning mind reasonably could have determined that the factual conclusions reached were proved by the weight of the evidence from the entire record." *Deeth v. Dir., N.D.*

*Dep't of Transp.*, 2014 ND 232, ¶ 10, 857 N.W.2d 86. Although our review is limited to the record before the administrative agency, "the district court's analysis is entitled to respect if its reasoning is sound." *Id.* "An agency's conclusions on questions of law are subject to full review." *Id.* This Court "reviews constitutional rights violations under the de novo standard of review." *State v. Williams*, 2015 ND 103, ¶ 5, 862 N.W.2d 831.

[¶6] Bridgeford asserts the initial knocking on the window of his vehicle by the officer was a trespass and an attempt to gather information that must be considered a search subject to the warrant requirement of the Fourth Amendment. Bridgeford also challenges the entry into his vehicle as an impermissible warrantless search in violation of the Fourth Amendment.

III

[¶7] Bridgeford contends the officer trespassed on his property by knocking on the vehicle's window, the knocking on the window was an attempt to gather information, and a search which required a warrant. He argues the officer's knocking on the window was not within the community caretaking exception to the requirement for a warrant.

[¶8] "Law enforcement officers often serve as community caretakers." *State v. Schneider*, 2014 ND 198, ¶ 8, 855 N.W.2d 399. The United States Supreme Court described community caretaking functions as those "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.* (quoting *Cady v. Dombrowski*, 413 U.S. 433, 441 (1973)). Community caretaking justifies law enforcement contact with citizens without reasonable suspicion of unlawful conduct. *Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶ 14, 632 N.W.2d 419. Contact with citizens falls within the community caretaking role when an officer's objective is to help a person in possible need of assistance. *See City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478.

[¶9] In cases involving motor vehicles, the "law distinguishes between the approach of an already stopped vehicle and the stop of a moving one." *Abernathey v. Dep't of*

3

*Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. "When an officer approaches a parked vehicle to inquire in a conversational manner whether the occupant is okay or needs assistance, the officer is engaged in the role of a community caretaker, with actions separate from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Leher*, 2002 ND 171, ¶ 7, 653 N.W.2d 56.

[¶10] "[W]here it is obvious a citizen neither needs nor desires assistance, an officer has no community caretaking role to fill." *Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶ 9, 665 N.W.2d 45. However, the appearance of an individual slumped over sleeping is not an obvious indication that a citizen does not need assistance. *Id.*; *see also State v. Smith*, 2005 ND 21, ¶ 21, 691 N.W.2d 203; *Lapp*, 2001 ND 140, ¶¶ 14-15, 632 N.W.2d 419; *State v. Franklin*, 524 N.W.2d 603, 605 (N.D. 1994). When an officer encounters a person "whose state of consciousness prevents a conversational inquiry from occurring," the officer must decide the actions necessary to get the person to respond and may need to approach a non-responsive person "differently from a person who is conscious and able to converse with the officer." *City of Mandan v. Gerhardt*, 2010 ND 112, ¶ 17, 783 N.W.2d 818 (citing *Rist*, at ¶ 10). To determine if assistance is needed, it is reasonable for an officer to knock on a vehicle's window. *See Rist*, at ¶ 10; *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 10, 571 N.W.2d 137. By knocking, an officer is doing "no more than any private citizen might do." *Florida v. Jardines*, 569 U.S. 1, 8 (2013) (discussing warrantless searches of homes).

[¶11] In *Lapp*, we held community caretaker functions supported an officer's encounter with a driver, including knocking on the vehicle's window. 2001 ND 140, ¶ 14, 632 N.W.2d 419. In *Lapp*, an officer arrived at a business parking lot to find a man slumped over the steering wheel of a running vehicle. *Id.* at ¶ 15. A security guard had tried to wake the man by knocking on the window for ten minutes before the officer arrived. *Id.* After the officer tapped on the window twice within two minutes, the man woke up. *Id.* At that point, the officer noticed the man's glossy eyes and opened the door. *Id.* We determined "the encounter was within the officer's

role as a community caretaker. Until the officer conversed with [the man] and ascertained [he] did not need medical attention, the officer was justified in investigating [his] condition." *Id*. at ¶ 16.

[¶12] In *Sivertson*, an officer approached a vehicle stopped behind a traffic accident after noticing it was not passing the scene like other motorists. 1997 ND 204, ¶¶ 2-3, 571 N.W.2d 137. The officer testified he made contact to ensure the driver was alright. *Id*. at ¶ 4. Because the driver was "fixated forward" when the officer approached, the officer tapped on the window to get the driver's attention. *Id*. at ¶ 10. We held the officer's actions "were a permissible part of a legitimate caretaker encounter." *Id*. This Court made a similar determination in *City of Grand Forks v. Zejdlik*, where an officer repeatedly knocked on the driver's window to get Zejdlik's attention. 551 N.W.2d 772, 773 (N.D. 1996). *See also Gerhardt*, 2010 ND 112, ¶ 18, 783 N.W.2d 818.

[¶13] The officer's knocking on Bridgeford's vehicle window was within the scope of the officer's community caretaking function. Because the officer was acting within his role as a community caretaker, the officer's knocking on the window was not an impermissible trespass on Bridgeford's property and was not an attempt to gather information which required a warrant.

IV

[¶14] Bridgeford was unresponsive to the officer's presence next to the vehicle and remained unresponsive following significant attempts to get his attention from outside the vehicle. After Bridgeford failed to respond, the officer opened the door of Bridgeford's vehicle and shook Bridgeford until he responded. The district court concluded the entry into the vehicle was improper because it was a search that fell outside any exception to the warrant requirement of the Fourth Amendment.

[¶15] Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and by Section 8, Article 1 of the North Dakota Constitution. *Abernathey*, 2009 ND 122, ¶ 8, 768 N.W.2d 485. "An individual may challenge a search under the Fourth Amendment if it violates the individual's

reasonable expectation of privacy, or involves an unreasonable physical intrusion of a constitutionally protected area, in order to find something or obtain information." *United States v. Cowan*, 674 F.3d 947, 955 (8th Cir. 2012) (citations and quotations omitted).

[¶16] Searches without a warrant are not unreasonable under the Fourth Amendment if the government can show the search falls under an exception to the search warrant requirement. *State v. Matthews*, 2003 ND 108, ¶ 10, 665 N.W.2d 28. "Acting in a community caretaking capacity is an exception to the warrant requirement of the Fourth Amendment." *State v. Gill*, 2008 ND 152, ¶ 26, 755 N.W.2d 454 (citing *Dombrowski*, 413 U.S. at 441). The officer's entry into the vehicle was a search, and therefore we must consider whether an exception to the warrant requirement of the Fourth Amendment applies.

[¶17] We have previously noted that "[i]f the police find a person unconscious or disoriented and incoherent in a vehicle . . . , it is reasonable for them to enter the vehicle for the purpose of giving aid to the person in distress and of finding information bearing upon the cause of his condition." *Gerhardt*, 2010 ND 112, ¶ 11, 783 N.W.2d 818 (citing Wayne R. LaFave, Search & Seizure § 7.4(f) (4th ed. 2004)). We have previously declined to hold an officer's entry into a vehicle during a community caretaker encounter was an improper warrantless search. *Rist*, 2003 ND 113, ¶ 15, 665 N.W.2d 45. In *Rist*, a deputy observed a man slumped behind the steering wheel of a parked, non-running vehicle and decided to perform a welfare check. *Id*. at ¶ 2. The deputy approached the rolled down driver's side window and shouted "Sheriff's Department, wake up!" several times. *Id*. When the driver did not wake up, the deputy reached inside through the open window and shook the driver's left shoulder. *Id*. After the driver woke up, the deputy smelled alcohol and noticed an open beer can. *Id*. at ¶ 3. We determined "the deputy could not be sure whether [the driver] was simply sleeping in his vehicle or in need of assistance." *Id*. at ¶ 11.

[¶18] Here, an officer noticed Bridgeford appeared to be asleep in a running vehicle at a gas station around 1:30 a.m. The record provides no indication of any obvious

6

sign Bridgeford did not need or desire assistance. The officer approached the vehicle and knocked for 15 seconds in an attempt to make contact with Bridgeford. Despite the officer's loud knocking and raised voice, Bridgeford did not wake up or move. Bridgeford's unresponsiveness prompted the officer to open the vehicle door and shake Bridgeford to make sure he was alright. At this point, after entering the vehicle to determine if Bridgeford did not require assistance, the officer smelled alcohol and had reasonable suspicion to believe Bridgeford had been driving under the influence.

[¶19] Bridgeford attempts to distinguish his case from our prior cases by arguing he was not "slumped" behind his steering wheel, and the officer had not received a call from a concerned/complaining third party. Implicitly, Bridgeford argues there needs to be some objective sign of distress in excess of him sleeping and being non-responsive for the officer to continue the community caretaker function from outside the vehicle to inside the vehicle.

[¶20] While we have held the community caretaker function does not extend to "circumstances where it is obvious that a citizen is neither in need of nor desires assistance," *Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478 (citing *State v. DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579), our caselaw allows an officer to continue a community caretaker role from outside a vehicle to the inside of a vehicle when a sleeping individual fails to respond to attempts to get a response from outside the vehicle. For example, we have previously held until the officer has conversed with an unresponsive individual seated within a vehicle and ascertained that the individual does not need medical attention, an officer is justified in opening the vehicle door and investigating the occupant's condition. *Lapp*, 2001 ND 140, ¶ 16, 632 N.W.2d 419, 424. When "an individual whose state of consciousness prevents a conversational inquiry from occurring . . . the officer must determine what actions need to be taken to get the individual to respond and therefore may need to approach a person who does not respond differently from a person who is conscious and able to converse with the officer." *Rist*, 2003 ND 113, ¶ 10, 665 N.W.2d 45. In *Rist*, we noted when the

7

deputy observed Rist unresponsive within the vehicle, "the deputy could not be sure whether Rist was simply sleeping in his vehicle or in need of assistance." *Id*. at ¶ 11.

V

[¶21]   The officer's actions remained within the community caretaker exception to the warrant requirement of the Fourth Amendment when he knocked on Bridgeford's window.   The officer's actions also remained within the community caretaker exception when entering Bridgeford's vehicle subsequent to Bridgeford's failure to respond to the officer's actions outside the vehicle.   We reverse the district court's judgment and reinstate the Department's suspension of Bridgeford's driving privileges.

[¶22]   Jon J. Jensen
Lisa Fair McEvers
Gerald W. VandeWalle, C.J.

**Crothers, Justice, concurring in part and dissenting in part.**

[¶23]   I concur in that portion of the majority opinion concluding the officer's knocking on Bridgeford's car window was community caretaking and not a Fourth Amendment violation involving trespass.   I respectfully dissent from that portion of the majority opinion suggesting law enforcement can proceed under the community caretaking function to enter a constitutionally protected area unless a person affirmatively communicates they neither need nor desire assistance.

[¶24]   This Court reviewed our application of the community caretaking function as follows:

> "Law enforcement officers often serve as community caretakers. *Lapp v. N.D. Dep't of Transp.*, 2001 ND 140, ¶ 14, 632 N.W.2d 419 (citing *State v. DeCoteau*, 1999 ND 77, ¶ 19, 592 N.W.2d 579).   The United States Supreme Court described community caretaking functions as those 'totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.' *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).   Community caretaking allows law enforcement-citizen contact, including stops, without an officer's reasonable suspicion of criminal conduct.   *State v. Glaesman*, 545 N.W.2d 178, 181 (N.D. 1996).   For Fourth Amendment purposes, a seizure does not occur when an officer approaches a parked vehicle

8

if the officer questions the occupant in a conversational manner and does not issue orders to the person or demand a response. *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992) (citing *Wibben v. N.D. State Highway Comm'r*, 413 N.W.2d 329, 334-35 (N.D. 1987) (VandeWalle, J., concurring)). However, even a casual encounter can become a seizure if a reasonable person would view the officer's actions—if done by another private citizen—as threatening or offensive. *Id.* (citing *Wibben*, at 335). This may occur through an order, a threat, or a weapon display. *Id.* An officer's initial community caretaking encounter also may cause the officer to develop a reasonable and articulable suspicion of unlawful conduct. *Lapp*, at ¶ 14.

"Our previous cases provide examples of law enforcement officers performing community caretaking functions. *See Lapp v. Dep't of Transp.*, 2001 ND 140, ¶¶ 14-15, 632 N.W.2d 419 (holding an officer's encounter with an individual justified by the officer's community caretaking role when the individual was slumped over the steering wheel of a vehicle with its engine running); *City of Fargo v. Sivertson*, 1997 ND 204, ¶ 10, 571 N.W.2d 137 (determining an officer's initial approach of a driver who failed to proceed around the scene of an accident with the rest of traffic was a caretaking encounter); *City of Grand Forks v. Zejdlik*, 551 N.W.2d 772, 773-75 (N.D. 1996) (holding an officer was acting as a community caretaker when he initially approached an individual slumped over the steering wheel of an idling vehicle); *State v. Franklin*, 524 N.W.2d 603, 605 (N.D. 1994) (determining officers' approach of individuals parked at night in motel parking lot and slumped down in their seats was more of a caretaking encounter than a search or seizure); *State v. Halfmann*, 518 N.W.2d 729, 730-31 (N.D. 1994) (holding an officer acted in a caretaking capacity when he approached a driver after she drove to the shoulder of a gravel road and stopped her vehicle).

"A review of our case law also reveals situations where law enforcement officers did not act as community caretakers. *See State v. Keilen*, 2002 ND 133, ¶ 19, 649 N.W.2d 224 (holding the community caretaking exception did not apply to an apartment search when officers arrived and did not see a disturbance or anyone in need of assistance); *City of Jamestown v. Jerome*, 2002 ND 34, ¶ 8, 639 N.W.2d 478 (determining an officer did not act as a community caretaker because his purpose in talking with the defendant was to investigate a possible legal violation); *State v. DeCoteau*, 1999 ND 77, ¶ 21, 592 N.W.2d 579 (holding officers had no community caretaking role to fill when they arrived at a home, saw no disturbance, and were told by the homeowner she did not need or request their assistance); *State v. Hawley*, 540 N.W.2d 390, 392 (N.D. 1995) (declining to address community

9

caretaking because the officer had a reasonable and articulable suspicion of a parking violation); *State v. Brown*, 509 N.W.2d 69, 71-72 (N.D. 1993) (holding an officer's vehicular stop was made to determine if driver was intoxicated, not for the community caretaking purpose of rendering assistance); *State v. Sarhegyi*, 492 N.W.2d 284, 285-86 (N.D. 1992) (determining an officer's stop of a lone vehicle parked in a farm implement dealer's lot, which attempted to leave when he approached, was not community caretaking); *State v. Langseth*, 492 N.W.2d 298, 301 (N.D. 1992) (concluding the community caretaking exception did not apply when an officer pursued the defendant while flashing the patrol car's warning lights)."

*State v. Boyd*, 2002 ND 203, ¶¶ 7-9, 654 N.W.2d 392.

[¶25]  I believe the majority subtly changes the inquiry rather than carefully follow our cases.  They write, "The record provides no indication of any obvious sign Bridgeford did not need or desire assistance."  Majority opinion, ¶ 18.  However, it was not incumbent on Bridgeford to communicate that he did not need or desire assistance.  Instead, under the community caretaker function an officer cannot invade a constitutionally protected space unless it is clear that assistance is needed or wanted.  To do so, the State must prove the officer objectively thought Bridgeford needed help.

[¶26] Here, Bridgeford did not display signs of distress.  There was no indication of trauma.  He was not acting erratically.  Unlike our other impaired driver cases where entry into the vehicle was found to be community caretaking, Bridgeford did not appear to be incapacitated or need help.  Instead, the officer testified that "it appeared that there was a male sleeping inside of the vehicle" and that Bridgeford "just looked like he was sleeping."  Therefore, I respectfully dissent from that part of the majority opinion holding the officer's warrantless entry into the automobile did not violate the Fourth Amendment to the United States Constitution.

[¶27]  Daniel J. Crothers
       Jerod E. Tufte