# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2021 ND 81

City of West Fargo,                                    Plaintiff and Appellee

    v.

Bridget Rachel Medbery,                              Defendant and Appellant

## No. 20200222

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable Wade L. Webb, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Stephen R. Hanson, II, West Fargo, ND, for plaintiff and appellee.

Adam Justinger, Fargo, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Bridget Rachel Medbery appeals from a criminal judgment entered as a result of her conditional plea of guilty to actual physical control, reserving her right to appeal the district court's order denying her motion to suppress. On appeal, Medbery argues the district court erred in concluding the community caretaker exception to the warrant requirement applied. Medbery further argues the court erred in finding law enforcement had reasonable and articulable suspicion of criminal activity at the time she was seized, and requests the denial of her motion to suppress be reversed. We affirm.

I

[¶2]   On November 21, 2019, officers responded to a report that a woman, later identified as Medbery, was unconscious in the driver's seat of a vehicle parked in a driveway. Medbery was ultimately arrested for and charged with actual physical control of a motor vehicle while under the influence of alcohol. On March 6, 2020, Medbery moved to suppress the evidence gathered from the stop, arguing she was unconstitutionally seized.

[¶3]   A hearing on Medbery's motion to suppress was held on July 8, 2020. The two officers who responded to the report on November 21, 2019, Sergeant Patrick Hanson and Officer Dawson Rogstad, testified. Hanson testified that he arrived on scene, with his emergency lights activated, after paramedics but before Rogstad. Video from Rogstad's patrol car was introduced at the hearing. After reviewing the video, Rogstad testified the ambulance was parked in front of the driveway and Hanson's patrol car was parked behind the ambulance.

[¶4]   Hanson testified that while Medbery was conscious when he arrived on scene, she seemed impaired and unable to respond to questions posed by either paramedics or law enforcement. Hanson further testified that when he arrived on scene Medbery's driver side door was already open. At one point Medbery started her vehicle, and a paramedic got into the vehicle and shut off her car. Hanson stated he asked Medbery to step out of the vehicle to determine why

1

she was not able to answer questions from both paramedics and law enforcement, and for safety reasons because she had previously started her vehicle. Hanson testified he detected a strong odor of alcohol after Medbery stepped out of the vehicle and observed Medbery had poor balance. Rogstad arrived on scene shortly after Medbery stepped out of her vehicle. Hanson testified it was at this point he began questioning for a DUI investigation, which he turned over to Rogstad.

[¶5] Ruling from the bench, the district court denied Medbery's motion, finding the officer was acting in a community caretaking capacity when he asked Medbery to exit her vehicle. The court found Medbery was unresponsive to questions and was in obvious need of assistance. The court further found that what began as a community caretaking encounter led to a reasonable suspicion of criminal activity after officers smelled the strong odor of alcohol emanating from Medbery after she stepped out of her car.

[¶6] On August 10, 2020, Medbery entered a conditional guilty plea, reserving her right to appeal the denial of her motion to suppress. Medbery appealed on August 19, 2020.

II

[¶7] On appeal, Medbery argues the district court erred in denying her motion to suppress evidence because she was unconstitutionally seized. The standard of review for a motion to suppress is well established:

> [W]e defer to the district court's findings of fact and resolve conflicts in testimony in favor of affirmance. We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the trial court's findings, and the decision is not contrary to the manifest weight of the evidence. Our standard of review recognizes the importance of the district court's opportunity to observe the witnesses and assess their credibility. Questions of law are fully reviewable on appeal, and whether a finding of fact meets a legal standard is a question of law.

*City of Bismarck v. Vagts*, 2019 ND 224, ¶ 4, 932 N.W.2d 523 (quoting *State v. Bohe*, 2018 ND 216, ¶ 9, 917 N.W.2d 497).

[¶8]  "Unreasonable searches and seizures are prohibited by the Fourth Amendment to the United States Constitution and by Section 8, Article 1 of the North Dakota Constitution." *Bridgeford v. Sorel*, 2019 ND 153, ¶ 15, 930 N.W.2d 136. "[A] seizure occurs only when a law enforcement officer, by means of physical force or show of authority, in some manner restrains the liberty of a citizen." *Rist v. N.D. Dep't of Transp.*, 2003 ND 113, ¶ 8, 665 N.W.2d 45. "Acting in a community caretaking capacity is an exception to the warrant requirement of the Fourth Amendment." *Bridgeford,* at ¶ 16 (quoting *State v. Gill*, 2008 ND 152, ¶ 26, 755 N.W.2d 454). An officer's contact with citizens falls within the community caretaking role when the officer's objective is to help a person in possible need of assistance. *Id*. at ¶ 8. An officer acting within a community caretaker capacity does not need reasonable suspicion of unlawful conduct to justify contact with citizens. *Id.*

[¶9]  "In cases involving motor vehicles, the 'law distinguishes between the approach of an already stopped vehicle and the stop of a moving one.'" *Bridgeford,* 2019 ND 153, ¶ 9 (quoting *Abernathey v. Dep't of Transp.*, 2009 ND 122, ¶ 8, 768 N.W.2d 485). "A law enforcement officer's 'approach [of] a parked vehicle is not a seizure if the officer inquires of the occupant in a conversational manner, does not order the person to do something, and does not demand a response.'" *Abernathey* at ¶ 8 (quoting *State v. Langseth*, 492 N.W.2d 298, 300 (N.D. 1992)).

[¶10] This Court has also made it clear that "[a] caretaking encounter does not foreclose an officer from making observations that lead to a reasonable and articulable suspicion." *State v. Keilen*, 2002 ND 133, ¶ 14, 649 N.W.2d 224. "The reasonable and articulable suspicion standard is an objective one and does not hinge upon the subjective beliefs of the arresting officer." *State v. Leher*, 2002 ND 171, ¶ 11, 653 N.W.2d. 56. To determine whether a Fourth Amendment violation has occurred, this Court objectively assesses the officer's actions in light of the facts and circumstances at the time. *Id.*

## A

[¶11] Medbery concedes law enforcement may have been dispatched to a community caretaking capacity, but asserts that by the time law enforcement arrived she was conscious, alert, and required no assistance. Medbery also asserts she was exercising her right to refuse to answer law enforcement's and paramedics' questions. Medbery further argues she was seized when the officers stopped her from leaving by ordering her to turn off her vehicle, activating the patrol car's emergency lights, and blocking in her vehicle.

[¶12] Hanson testified he activated his emergency lights. Hanson also testified Medbery was unable to respond to questions posed by law enforcement and paramedics, stating Medbery "wasn't even acknowledging that we were even asking these questions." Hanson also testified he and the paramedics "coached" her to turn off her car, after she started it, but another paramedic climbed in the passenger door and shut the car off. Rogstad testified the ambulance was parked behind Medbery, blocking the driveway, and Hanson's vehicle was parked behind the ambulance. Medbery did not testify at the hearing, and offered no evidence to contradict either officer's testimony.

[¶13] In *State v. Schneider*, the defendant argued a deputy's approach with overhead lights activated was a "show of authority" which effectuated a seizure under the Fourth Amendment. 2014 ND 198, ¶ 13, 855 N.W.2d 399. This Court has established that it is a law enforcement officer's use of emergency lights in *pursuit* of a person in order to stop a moving vehicle that effectuates a seizure under the Fourth Amendment. *Id.* at ¶ 15 (citing *Langseth*, 492 N.W.2d 298). Law enforcement blocking a vehicle in so that the occupant is unable to leave may result in a seizure under the Fourth Amendment. *State v. Thompson*, 2011 ND 11, ¶ 10, 793 N.W.2d 185. *See also United States v. Tuley*, 161 F.3d 513, 515 (8th Cir. 1998).

[¶14] Here, it is undisputed that Medbery was parked in her vehicle in a driveway before law enforcement arrived. There was no pursuit to stop her vehicle through use of the patrol car's emergency lights. Without more, the activation of law enforcement's vehicle lights does not establish a seizure of a parked vehicle or its driver. Even if Medbery was not completely blocked by

4

the ambulance, the addition of Hanson's patrol car parked directly behind the ambulance could not have restricted Medbery's freedom of movement any more than she already was restricted by the ambulance. In addition, there was no evidence that Medbery saw the emergency lights, or knew where Hanson's patrol car was parked.

[¶15] This Court defers to the district court's ability to judge the credibility of witnesses, and resolves contradictory testimony in favor of affirmance. The court found Hanson's testimony credible. The court found that Medbery was in obvious need of assistance due to her nonresponsive state and was acting as a community caretaker when Hanson approached her vehicle. These findings are not contrary to the manifest weight of the evidence. Medbery was not seized in violation of the Fourth Amendment based on Hanson's interactions with her prior to exiting her vehicle.

## B

[¶16] Medbery argues she was unlawfully seized when Hanson "ordered" her out of her vehicle. This Court has stated:

> When an officer approaches a parked vehicle to inquire in a conversational manner whether the occupant is okay or needs assistance, the officer is engaged in the role of a community caretaker, with actions separate from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . . When an officer encounters a person whose state of consciousness prevents a conversational inquiry from occurring, the officer must decide the actions necessary to get the person to respond and may need to approach a non-responsive person differently from a person who is conscious and able to converse with the officer.

*Bridgeford,* 2019 ND 153, ¶¶ 9-10 (internal quotations omitted).

[¶17] When a police officer finds a person unconscious or disoriented and incoherent in a vehicle it is reasonable for law enforcement to enter the vehicle for the purpose of giving aid and discovering the cause of the distressed person's condition. *Bridgeford,* 2019 ND 153, ¶ 17. A request that a driver open

a door, roll down a window, or exit a vehicle are also permissible, but same is not true if an officer orders these actions. *State v. Foote,* 2020 ND 266, ¶ 10, 952 N.W.2d 37 (relying on *Abernathey*, 2009 ND 122, ¶ 12). In other words, an occupant of a vehicle is not "seized" when law enforcement, while engaged in community caretaking capacity, requests, rather than orders or commands certain conduct.

[¶18] When Hanson arrived, paramedics were dealing with Medbery and the vehicle door was already open. Medbery was conscious, but Hanson's testimony described Medbery as unable to respond. The only evidence in the record on whether Medbery was asked or ordered out of her vehicle was Hanson's testimony, who stated that he asked Medbery to step out of her car. Medbery offered no testimony or other evidence that she was ordered out of her vehicle to the district court. The court found Hanson requested Medbery step out of the vehicle to see if she was okay, because she was obviously in need of assistance. These findings are not contrary to the manifest weight of the evidence. The record supports that Hanson asked, rather than ordered, Medbery to exit the vehicle. Hanson testified that Medbery started her vehicle as if to drive somewhere, despite being parked in a residential driveway with an ambulance parked behind her. Under these circumstances, Hanson's request that Medbery step out of her vehicle for her safety, and the safety of anyone nearby, was reasonable. Medbery was not seized in violation of the Fourth Amendment when Hanson asked her to exit her vehicle.

III

[¶19] Medbery argues Hanson lacked reasonable and articulable suspicion before she was seized.

[¶20] Police may detain an individual for investigative purposes if there is reasonable and articulable suspicion that criminal activity is afoot. *State v. James*, 2016 ND 68, ¶ 7, 876 N.W.2d 720. "Reasonable suspicion exists when a reasonable person would be justified by some objective reason to suspect the defendant was, or was about to be, engaged in unlawful activity." *State v. Powley*, 2020 ND 124, ¶ 14, 943 N.W.2d 766 (quoting *State v. White*, 2017 ND

6

51, ¶ 14, 890 N.W.2d 825). Determining whether an officer had reasonable suspicion is a fact-specific inquiry evaluated under an objective standard based on the totality of the circumstances. *State v. Bolme*, 2020 ND 255, ¶ 7, 952 N.W.2d 75. "The ultimate conclusion of whether the facts support a reasonable and articulable suspicion is fully reviewable on appeal." *State v. Wolfer*, 2010 ND 63, ¶ 5, 780 N.W.2d. 650 (citations omitted).

[¶21] The district court did not specify the exact moment of Medbery's seizure, but found that it occurred after Medbery was asked to step out of her vehicle. The court found that after Medbery stepped out of her vehicle Hanson was able to smell the odor of alcohol, at which point Hanson developed reasonable suspicion of a crime. The court also found Medbery's seizure followed Hanson's development of reasonable suspicion. Assuming Medbery was seized almost immediately after she stepped out of the vehicle, when officers testified they smelled the odor of alcohol, noticed her poor balance, and began a criminal investigation, this Court must determine whether the officers had sufficient reasonable and articulable suspicion to seize Medbery at that time.

[¶22] Hanson testified when he arrived, Medbery was in the driver's seat and appeared impaired and unable to respond. Hanson stated Medbery started her vehicle. Both Hanson and Rogstad testified they smelled a strong odor of alcohol after Medbery exited her vehicle. The odor of alcohol is also a well-established indicator of intoxication. *See, e.g., State v. Casatelli*, 2021 ND 11, ¶ 18, 953 N.W.2d 656. Hanson also testified Medbery exhibited poor balance upon exiting her vehicle. Poor balance may be an indicator of intoxication. *See Maisey v. N.D. Dep't of Transp.*, 2009 ND 191, ¶ 13, 775 N.W.2d 200 (stating poor balance shows physical or mental impairment). These observations occurred before the officers began their investigation. We conclude the officers had reasonable, articulable suspicion that Medbery was in actual physical control of a motor vehicle while under the influence of alcohol based on the totality of the circumstances.

IV

[¶23] We conclude the district court did not err in denying Medbery's motion to suppress evidence because the officer's actions remained within the

7

community caretaker exception when the officer requested Medbery step out of her vehicle. After Medbery exited her vehicle the officer had reasonable, articulable suspicion to support her seizure. We affirm the district court's order denying Medbery's motion to suppress and the criminal judgment.

[¶24] Jon J. Jensen, C.J.
Gerald W. VandeWalle
Daniel J. Crothers
Lisa Fair McEvers
Jerod E. Tufte